[Civ. No. 50557. Second Dist., Div. Three. May 24, 1977.]

BAXTER WARD, as Supervisor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY et al.,
Respondents;
PHILIP E. WATSON, Real Party in Interest.

24

**COUNSEL**

John H. Larson, County Counsel, Peter R. Krichman and Louis V. Aguilar, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

de Krassel & Tierney and Peter de Krassel for Real Party in Interest.

## OPINION

FORD, P. J.— ■ ■■■ Petitioners Baxter Ward, Supervisor for the Fifth Supervisorial District and Chairman of the Board of Supervisors for the County of Los Angeles, and Carl Lance Brisson and Neil Frerichs, employees of the County of Los Angeles, seek a writ of mandate compelling respondent superior court to vacate its order of January 7, 1977, granting the motion of the real party in interest, Philip E. Watson, to disqualify the county counsel, John H. Larson, from representing petitioners[1] in a lawsuit brought against petitioners by Watson "individually and as a taxpayer and resident of the County of Los Angeles." In a 21-count complaint brought pursuant to the Civil Rights Act (42 U.S.C. § 1983) Watson sought damages and injunctive relief, claiming that petitioners violated his constitutional rights by subjecting his person and residence to unlawful surveillance, by unlawfully attempting to obtain his confidential Internal Revenue Service records and tax returns, and by publishing libelous and slanderous statements concerning him.

In support of his motion to disqualify the county counsel from further representation of petitioners in the action, Watson took the position that such representation is in violation of rule 4-101 of the Rules of Professional Conduct of the State Bar of California. Rule 4-101 provides as follows: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

The body of Watson's declaration in support of his motion to disqualify the county counsel was as follows: "1. I am the incumbent Assessor for the County of Los Angeles and have been the Assessor since

---

[1] The validity of an order barring an attorney from further representation of a party may be reviewed upon an application for a writ of mandate. (*Big Bear Mun. Water Dist. v. Superior Court,* 269 Cal.App.2d 919, 925 [75 Cal.Rptr. 580]; *Earl Scheib, Inc. v. Superior Court,* 253 Cal.App.2d 703 [61 Cal.Rptr. 386].)

September 3, 1962. This Declaration is made in my personal and official capacity. [¶] 2. At all times during my incumbency, Los Angeles County Counsel has been the legal representative of my office and in that capacity has advised this Office on questions of law regarding taxability of all property subject to taxation in Los Angeles County, including but not limited to, possessory interests, oil and gas companies' leaseholds and personal property, oil and other companies' work in process, inventories of finished goods, and leased equipment of all types. Furthermore, *County Counsel has counseled me on personal matters.* In these regards, County Counsel has received communications from me in the context of attorney-client relationships. County Counsel has advised me individually on questions of law in civil actions in which I was individually named as a defendant. [¶] 3. During the course of its representation, County Counsel has appeared on behalf of this office in virtually every case brought in Superior Court regarding property taxation as well as all appeals taken therefrom. Additionally, County Counsel has appeared with respect to various properties on behalf of this office before the Assessment Appeals Board. Furthermore, County Counsel has appeared on my behalf personally and has further agreed to do so in any actions brought against me. Specifically, County Counsel has defended me in my capacity as County Assessor and as an individual in the following cases: *Docter v. Watson, et al.,* LASC Case No. C 128604; *Houston v. Watson,* LASC Case No. C 177013; *Levy v. Ostley, et al.,* LASC Case No. C 81867; and *Silver v. Watson,* 26 Cal.3d [sic] 905. [¶] 4. At no time have I authorized County Counsel to represent the defendants in said action as during the course of my personal representation by County Counsel confidential communications were transmitted to his office."

In his declaration in opposition to the motion, the county counsel, John H. Larson, stated as follows: "1. That he is the County Counsel of the County of Los Angeles, that as County Counsel he is the attorney for the County of Los Angeles and the Board of Supervisors and all County officers thereof in all matters and questions of law pertaining to their duties and has exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof is concerned or is a party. [¶] 2. That Philip E. Watson as a public officer has been represented by County Counsel and members of his staff in various civil actions. [¶] 3. That neither County Counsel nor members of his staff have represented Philip E. Watson in personal matters unrelated to his duties and responsibilities as a public officer. [¶] 4. That to my knowledge neither County Counsel nor members of his staff have received

confidential communications from Philip E. Watson which relate to the subject matter of this lawsuit."

In its memorandum with respect to its ruling, the trial court expressed its reasons for granting Watson's motion to disqualify the county counsel as follows: "The Court expressed concern that litigation of causes of action 9 through 21, and discovery related thereto, will ultimately involve questions relating to the operation of the Assessor's office and the Assessor, as to which the office of County Counsel has knowledge and information gained in its professional capacity and which is therefore confidential. [¶] The Court inquired of counsel for defendants whether the defense of truth would be waived to the causes of action charging defamation. The answer was 'No.' [¶] The Court inquired of counsel for defendants whether it would be feasible that this case be handled only by deputies who have not previously and are not now representing the Assessor or his office, and that this case and those deputies be insulated from the rest of the office, i.e., that those deputies have no communication regarding this case with others in the office. Counsel for defendants replied that this course is not possible because he and practically all of the other deputies in the office have represented and continue to represent the Assessor and/or his office. [¶] Accordingly, in view of Rule 4-101 of the Rules of Professional Conduct of the State Bar of California, and because of the inherent responsibility of the Court to all litigants, the motion of plaintiff was granted. Further, the Court expressed its belief that not only must impropriety be avoided, but also the appearance of impropriety. [¶] Counsel for defendants suggested that perhaps the granting of the motion is premature, urging that if a conflict of interests became apparent, it could be dealt with then. The Court expressed its strong belief that considering the likely breadth of scope of the case and the candid statements of counsel respecting prior and present representation of the Assessor and his office, it would be unwise and indeed hazardous to delay the granting of the motion. The prospects of a conflict and the great difficulties likely to be met in unraveling it require prompt and not belated action."

The parties have cited no analogous cases with respect to the application of rule 4-101 in a case involving a public attorney, such as the county counsel, nor has our independent research disclosed any such case. ■ It is to be noted that the basis of the attorney-client relationship in the case of public attorneys is not contractual, as is the case in the normal attorney-client relationship, but rather is statutory or mandated by a county or city charter. ■ The function of the Los

Angeles County Counsel is governed by the county charter. Thus, as was said by the court in *Board of Supervisors* v. *Simpson,* 36 Cal.2d 671, at pages 673-674 [227 P.2d 14]: "Apparently the county counsel of Los Angeles County is appointed pursuant to its charter which has provided for such office since its adoption in 1913, rather than the Political Code and its successor, the Government Code. That being true, the provisions of the Government Code relating to county counsel would not apply to the situation where the office of county counsel is established by charter in the manner here appearing."

The function of the Los Angeles County Counsel is set forth in article VI, section 21, of the Los Angeles County Charter as follows: "The County Counsel shall represent and advise the Board of Supervisors and all County, township and school district officers, in all matters and questions of law pertaining to their duties, and shall have exclusive charge and control of all civil actions and proceedings in which the County, or any officer thereof, is concerned or is a party."

Government Code section 995 provides in pertinent part as follows: "Except as otherwise provided in sections 995.2 and 995.4, upon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity." Thus, the county counsel has a duty imposed by law to represent county officers and employees in civil actions. (*Sinclair* v. *Arnebergh,* 224 Cal.App.2d 595, 597-598 [36 Cal.Rptr. 810].)

■ While the Los Angeles County Counsel's representation of the county, the board of supervisors or a public officer is required by law as opposed to being based on a contractual commitment, he is nevertheless, like all attorneys, subject to the Rules of Professional Conduct which govern his profession. Thus rule 1-100 provides that "these rules shall be binding upon all members of the State Bar." But rule 1-100 also provides that "[n]othing in these rules is intended to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation thereof." (See *Hutchins* v. *Municipal Court,* 61 Cal.App.3d 77, 86, fn. 9 [132 Cal.Rptr. 158].)

We turn then to a consideration of the applicability of rule 4-101 in the context of the case before us. ■ As was said by the court in *Kraus* v. *Davis,* 6 Cal.App.3d 484, at page 490 [85 Cal.Rptr. 846], quoting from

*Galbraith* v. *The State Bar,* 218 Cal. 329 [23 P.2d 291]: " 'A reasonable construction of this rule [rule 5 of the Rules of Professional Conduct, now rule 4-101] suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he *may* be called upon to use such confidential information. In subdivision 5 of section 282 of the Code of Civil Procedure it is declared to be the duty of an attorney "to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client." [Now found in Bus. & Prof. Code, § 6068, subd. (e).] (See, also, *Anderson* v. *Eaton,* 211 Cal. 113 . . .) In *Watchumna Water Co.* v. *Bailey,* 216 Cal. 564 . . ., it is declared that "an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." ' (218 Cal. at pp. 332-333. . . .)"

██ There are established exceptions to the general rule which are succinctly set forth in *Grove* v. *Grove Valve & Regulator Co.,* 213 Cal.App.2d 646, at page 652 [29 Cal.Rptr. 150], as follows: "The generally recognized exceptions are: (1) where the relationship of attorney and client was never in fact created between the attorney and the complaining party [citations]; (2) where the new employment is not inconsistent with the former employment [citation]; (3) where the client expressly or impliedly consents to the adverse representation [citation]."

Petitioners contend that the first exception is applicable here. Thus petitioners assert that "[t]he county counsel is in an exclusive attorney-client relationship with the County of Los Angeles" and that "[t]here can be no separate attorney-client relationship between the County Counsel and each separate officer, department, and/or employee of the County of Los Angeles." ██ As was stated in *Kraus* v. *Davis, supra,* 6 Cal.App.3d 484, at page 491: "The determination of the existence of an attorney-client relationship . . . is one of law. 'However where there is a conflict in the evidence the factual basis for the determination must first be determined, and it is for the trial court to evaluate the evidence. [Citation.]' [Citations.]"

There is no conflict in the evidence respecting the factual basis of the claimed attorney-client relationship in this matter. It is clear from the record that if an attorney-client relationship existed between the county counsel and real party in interest Philip Watson, it arose out of the county counsel's obligation pursuant to the Los Angeles County Charter to represent and advise county officers in matters pertaining to their duties and to exercise exclusive charge and control of all civil actions in which the county or any county officer is concerned or is a party. Accordingly, the determination as to whether the county counsel's obligations pursuant to the Los Angeles County Charter gave rise to an attorney-client relationship between the county counsel and Philip Watson as to which rule 4-101 is applicable is solely a question of law with respect to which this court is not bound by the trial court's determination.

The Los Angeles County Counsel has only one client, namely, the County of Los Angeles.[2] (See *Woolwine* v. *Superior Court,* 182 Cal. 388, 391 [188 P. 569].) Of course, the county acts through its board of supervisors, its officers and its employees, much as does a private corporation. Under the mandate of Los Angeles County Charter article VI, section 21, the county counsel must represent county officers in civil actions, but only as to matters wherein such officers acted in their representative capacity and within the scope of their official duties. Thus the county counsel's representation of county officers is analogous to the representation afforded officers of a corporation by corporate counsel.

In *Meehan* v. *Hopps,* 144 Cal.App.2d 284 [301 P.2d 10], the appellate court held that the mere fact that attorneys Edwards and Angell served as corporate counsel to the Rhode Island Insurance Co. on various matters did not establish an attorney-client relationship between Hopps, a former director, chairman of the executive committee, chairman of the board of directors and principal shareholder of the corporation, and the former corporate counsel, Edwards and Angell. In that case an action was brought on behalf of the shareholders, policyholders and creditors of the corporation for an accounting and other relief. Plaintiffs contended that Hopps had dominated and managed the corporation for his own private gain. Hopps moved the trial court to restrain Edwards and Angell from further participation in the case and from disclosing information

---

[2] Los Angeles County Charter, article XII, section 55, provides as follows: "The . . . county counsel, and . . . [his] deputies, shall not engage in any private law practice, and they shall devote all their time and attention during business hours, to the duties of their respective offices."

pertaining thereto on the ground that he had turned over to that firm as his lawyers certain files and documents which were to be used, or might be used, against him in the pending action. In affirming the trial court's order denying Hopps' motion, the appellate court stated (144 Cal.App.2d at pp. 290-293): "Appellant has not cited, nor have we found, any case holding that an attorney for a corporation is disqualified from representing it in an action brought by it against one of its officers, nor that in such an action the attorney may not use information received from such officers in connection with company matters. The attorney for a corporation represents it, its stockholders and its officers in their representative capacity. He in nowise represents the officers personally. It would be a sorry state of affairs if when a controversy arises between an attorney's corporate client and one of its officers he could not use on behalf of his client information which that officer was *required by reason of his position with the corporation to give to the attorney.*. . . [¶] Assuming that some of the information obtained from Hopps by counsel as representatives of the corporation is that upon which the receiver's contention that Hopps dominated the corporation, its officers and companies, to its damage, is partially based, nevertheless such fact would not prevent counsel from representing either the corporation or the receiver in a controversy with Hopps nor from using that information against him. To hold that it would do so, would, in effect, grant an immunity to Hopps to which he was not entitled. The fact that in the several matters in which counsel represented the corporation what appeared to be for the benefit of the corporation also was for Hopps' benefit as a principal stockholder and because of his interest in the allied companies, did not make counsel his personal attorneys. If this were true, then the attorney representing a corporation in any given matter becomes the personal attorney of each stockholder because the attorney's actions benefiting the corporation likewise benefit the stockholder. Such relationship would disqualify the attorney from acting adversely to the stockholder concerning that particular matter in any controversy between the stockholder and a third party, but obviously would not prevent the attorney from representing the corporation in any controversy between it and the stockholder. As attorneys for the corporation, counsel's first duty is to it. Likewise, as an officer of the corporation, it was Hopps' duty to disclose to it all information necessary for its purposes. To hold that the giving of such information in that more or less intimate relationship which necessarily must exist between an officer of the corporation and its attorneys would prevent the corporation attorneys from thereafter using it in favor of the corporation in litigation against the officer, would be unfair to the corporation and its stockholders, and

would violate the above mentioned very important precept, namely, that the attorney's first duty is to his client." (Italics added.) (To the same effect see: *U.S. Industries, Inc.* v. *Goldman,* 421 F.Supp. 7, 11; *Jacuzzi* v. *Jacuzzi Bros., Inc.,* 218 Cal.App.2d 24, 29 [32 Cal.Rptr. 188].)

Having found no cases dealing with the duties of public attorneys in situations similar to that involved in this case, we find the analogy to the duties of corporate counsel to be apt, and the reasoning of the court in *Meehan* v. *Hopps, supra,* to be compelling. ■ Accordingly, we hold that no attorney-client relationship existed between the county counsel and real party in interest Watson within the meaning of rule 4-101.

Our decision that the trial court erred in granting Watson's motion to disqualify the county counsel is further supported by the following reasoning. The purpose of rule 4-101 forbidding an attorney from accepting employment adverse to a former client is to protect the former confidential relationship. Thus the rule does not apply where an attorney accepts employment adverse to a former client if the matter bears no relationship to confidential information acquired by the attorney as a result of the former attorney-client relationship. (*Goldstein* v. *Lees,* 46 Cal.App.3d 614, 619 [120 Cal.Rptr. 253].)

In the matter before us, Watson's declaration in support of his motion to disqualify the county counsel set forth no facts showing the nature of the alleged confidential communications between himself and the county counsel, but merely stated that "[i]n these regards, County Counsel has received communications from me in the context of attorney-client relationships," and that "[a]t no time have I authorized County Counsel to represent the defendants in said action as during the course of my personal representation by County Counsel confidential communications were transmitted to his office." However, in Watson's points and authorities filed herein in opposition to the issuance of a writ of mandate it is made clear that the type of confidential communications Watson seeks to protect by asserting the disqualification of the county counsel are communications concerning the operation of the county tax assessor's office. Thus it is stated in Watson's points and authorities as follows: "[T]he fact remains as illustrated in Exhibit '5' of petition for Writ of Mandate, that questions involving the operation of the Assessor's office will be an issue and that County Counsel deputies representing or handling matters concerning the office will in fact be handling defense for the defendant. [¶] Therefore, such information gained through the

attorney-client relationship will be compromised by allowing the County Counsel to continue as attorneys for the defendant."[3]

The tax assessor's office is merely an arm of county government over which the board of supervisors has direct supervision. Thus Government Code section 25303 provides as follows: "The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly those charged with the assessing, collecting, safekeeping, management, or disbursement of the public revenues. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection."[4]

Any communication between Watson and the county counsel, pursuant to the discharge of their respective duties, concerning the operation of the assessor's office could not be considered a secret confidential communication so as to bar the county, acting through the board of supervisors, from obtaining that information. The assessor is an agent of the county. (*People* v. *Vallerga,* 67 Cal.App.3d 847, 876 [136 Cal.Rptr. 429].) As such, the assessor has a duty of full disclosure to his principal, the county. Communications by the assessor with respect to the operations of his office made to the county counsel are not subject to a claim of privilege as between the assessor and members of the board of supervisors, who are charged by law with the duty of supervising the conduct of the assessor's office.[5]

---

[3]Watson's reference to questions as to the operation of the assessor's office involved in the underlying suit presumably relates to the fact that the statements alleged to be defamatory in counts 9 through 21 of Watson's complaint were statements alleged to have been made by Supervisor Ward and largely concerned claimed improprieties in the manner in which Watson conducted his duties as tax assessor for the County of Los Angeles.

[4]Article III, section 10, of the Los Angeles County Charter provides as follows: "The Board of Supervisors shall have all the jurisdiction and power which are now or which may hereafter be granted by the constitution and laws of the State of California or by this Charter."

[5]Evidence Code section 962 provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

For the reasons stated herein we hold that the trial court erred in granting real party in interest Watson's motion to disqualify the county counsel from further representation of defendants.

Let a peremptory writ issue directing respondent court to vacate the order of January 7, 1977, granting the motion of real party in interest Watson to disqualify the Los Angeles County Counsel from further representation of petitioners in Los Angeles Superior Court case No. C 180581, entitled Philip E. Watson, individually and as a taxpayer and resident of the County of Los Angeles, v. Baxter Ward, et al., and to enter a new and different order denying said motion.

Allport, J., and Potter, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied July 21, 1977. Mosk, J., was of the opinion that the petition should be granted.