[No. D001619. Fourth Dist., Div. One. Dec. 21, 1984.]

CIVIL SERVICE COMMISSION OF SAN DIEGO COUNTY,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
COUNTY OF SAN DIEGO et al., Real Parties in Interest.

COUNSEL

M. James Lorenz, L. Adam Weiner, Susan A. Lanoue, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Richard A. Shines and Stillman, Green & Shinee for Petitioner.

No appearance for Respondent.

Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, and Arlene Prater, Deputy County Counsel, for Real Parties in Interest.

OPINION

WIENER, Acting P. J.—The difficult and sensitive question in this case is whether ethical considerations require disqualifying the county counsel as attorney for the County of San Diego (County) in the pending litigation between the County and the Civil Service Commission of the County of San Diego (Commission). The Commission seeks a writ of mandate after it unsuccessfully moved to disqualify the county counsel. We will grant the writ.

*Factual and Procedural Background*

Preliminarily we observe the functions of government make it necessary for some public agencies within a governmental body to be accorded a

considerable degree of independence vis-à-vis that body. The Commission is such an agency. It is charged with administering the County's personnel system, in the context of which it is empowered to investigate complaints filed by county employees regarding personnel actions taken by various county agencies, and to make rulings based on those investigations. Needless to say, an adverse Commission ruling is not always warmly embraced by the affected county agency.

The present case arises out of two such complaints—one filed by Ardelia McClure and one filed by William Chapman—and the consequent investigations. Both employees held positions with the County's department of social services (Department) and complained of assignment and classification actions taken by the Department to implement budget cutbacks. As is true with respect to nearly all Commission actions, Commission members and staff working on the McClure and Chapman investigations freely consulted with the office of county counsel for advice on legal matters. These consultations included discussions with County Counsel Lloyd Harmon and Deputy County Counsel Ralph Shadwell. At the time of the investigations, Shadwell was also the principal legal counsel for the department of social services, whose actions the Commission was investigating. The topics of discussion included the extent of the Commission's authority to remedy any perceived violation of the County's personnel regulations. The Commission kept county counsel apprised of the status of the investigation and the Commission deliberations with respect to the appropriate remedy.

Based on its investigations, the Commission ordered reinstatement of the affected employees, who had been demoted or laid off, and ordered backpay compensation. Disagreeing with the two rulings, the County filed suit in October 1983 against the Commission seeking judicial review of the Commission's action pursuant to Code of Civil Procedure sections 1085 and 1094.5.

The County is and has been represented in the underlying mandate proceeding by the office of county counsel. The Commission has obtained independent counsel. Based on county counsel's prior advisory role to the Commission on these matters, the Commission unsuccessfully moved to disqualify county counsel on the grounds of a conflict of interest. The court concluded the issues presented by the underlying writ proceeding were of a legal rather than factual nature—generally concerning the Commission's power to act—and that there was no showing that county counsel received any confidential information in the context of its prior representation of the Commission which could be used to the Commission's disadvantage in the present proceeding. Because the facts of this case present an important and recurring issue in the field of governmental law, we issued the alternative

writ. (See generally *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 129-130 [142 Cal.Rptr. 325].)

## I

We are thus faced with the question whether a public attorney who has advised a quasi-independent public agency with respect to a given matter may, consistent with his professional and ethical obligations, later represent other governmental entities suing the quasi-independent agency over the same matter. Our task is guided by two recent cases which reach different conclusions on questions of a public attorney's possible conflict of interest. Each party here relies on one of the cases and attempts to distinguish the other.

The County relies on *Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23 [138 Cal.Rptr. 532] in which Los Angeles County Assessor Phillip Watson sued Baxter Ward, Chairman of the Los Angeles County Board of Supervisors, and certain county employees for violation of his constitutional rights and defamation. The Los Angeles County Counsel represented Ward and the employees. Because county counsel's office had previously represented Watson and the assessor's office in numerous unrelated matters arising out of Watson's official duties, he moved to disqualify county counsel on the grounds of a conflict of interest. The *Ward* court rebuffed Watson's attempt on two separate bases. It first noted that county counsel had "only one client, namely, the County of Los Angeles." (*Id.*, at p. 32.) It therefore concluded that no independent attorney-client relationship had been established with Watson or the assessor's office. (*Id.*, at p. 34.) As a second ground, the court focused on Watson's claim that county counsel had obtained confidential information about him in the context of the prior representations. Because the prior representations of Watson and the assessor's office were substantively unrelated to the *Watson* v. *Ward* action, Watson necessarily contended that information concerning the operation of the assessor's office obtained by county counsel in the prior representations would be relevant to issues in the present case. (*Id.*, at pp. 34-35.) The court responded by pointing out that whatever information was disclosed to county counsel, it could hardly be considered confidential in that the assessor's office was directly responsible to the board of supervisors, which was entitled to full disclosure from the assessor regarding all material facts. (*Id.*, at p. 35.) It concluded, therefore, that county counsel could not have obtained confidential information which could be used against Watson. (*Ibid.*)

The County reads *Ward* for the broad proposition that there can never be a separate attorney-client relationship between county counsel and a County

official or constituent county agency because county counsel has a single client, namely, the County. With only one client, a fortiori there can be no conflict of interest.

The Commission disagrees with the County's broad reading of *Ward*, relying heavily on *People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150 [172 Cal.Rptr. 478, 624 P.2d 1206]. In *Deukmejian,* the Governor and various state agencies were sued by the Pacific Legal Foundation (PLF) and the Public Employees Service Association based on allegations that a major new piece of public employee collective bargaining legislation was unconstitutional. (See *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215].) After the PLF suit was filed, deputies from the Attorney General's office met with members of the State Personnel Board, one of the respondent state agencies in the lawsuit, pursuant to the Attorney General's statutory mandate to serve as counsel for state agencies. (*Deukmejian, supra,* 29 Cal.3d at p. 154.) At the meeting, the deputies outlined four options available to the board in responding to the suit and advised the board of the Attorney General's recommendation that it join in challenging the constitutionality of the statute. (*Ibid.*; see also *id.,* at p. 163 (dis. opn. of Richardson, J.).) The board declined to follow the Attorney General's recommendation. Approximately one week later, he filed an independent action against, inter alia, the State Personnel Board asserting that the collective bargaining statute was unconstitutional.

The Governor successfully moved to disqualify the Attorney General. The *Deukmejian* court held there was "no constitutional, statutory, or ethical authority" allowing the Attorney General to "represent clients one day, give them legal advice with regard to pending litigation, withdraw, and then sue the same clients the next day on a purported cause of action arising out of the identical controversy." (29 Cal.3d at p. 155.) Of particular interest is the manner in which the *Deukmejian* court deals with *Ward*. Although Justice Richardson's dissent places considerable reliance on both prongs of the *Ward* holding (*id.,* at pp. 165-166), the majority finds it distinguishable because the assessor brought his action "not as a public official" but rather " 'individually and as a taxpayer.' " (*Id.,* at p. 157, fn. 1.)

As we shall explain, we believe *Deukmejian* controls the result in this case. *Ward,* to the extent it is not inconsistent with *Deukmejian,* does not compel a contrary result.

## II

Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest

of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is "represented" by the attorney in a manner giving rise to an attorney-client relationship. (See generally *Hicks* v. *Drew* (1897) 117 Cal. 305, 307 [49 P. 189]; *Grove* v. *Grove Valve & Regulator Co.* (1963) 213 Cal.App.2d 646, 652 [29 Cal.Rptr. 150].) ■ Relying on *Ward,* the County here contends there was never an attorney-client relationship between the Commission and county counsel separate and distinct from county counsel's fundamental relationship with the County. We are unable to accept this contention for several reasons.

First, the identical situation existed in *Deukmejian* where the Attorney General was the statutorily authorized counsel for all state agencies, including the State Personnel Board. Relying on *Ward* the dissent in *Deukmejian* argued "the usual attorney-client relationship does not prevail. . . ." (29 Cal.3d at p. 165.) The majority apparently rejected this position, however, and consistently discussed and referred to the Attorney General as "counsel to the *board.* . . ." (*Id.,* at p. 154 (italics added); see also *id.,* at p. 156, referring to state agencies as the Attorney General's statutory *clients* (italics added).) We think it significant the *Deukmejian* majority distinguished *Ward* on the grounds the allegedly former client was not bringing the lawsuit in his official capacity. Here, as in *Deukmejian,* the challenged counsel is suing a public agency in its official capacity.

We also believe there is a critical distinction between this case and *Ward* which would warrant a different result even in the absence of *Deukmejian.* We have previously referred to the Commission as a "quasi-independent" county agency. In contrast to most county agencies, which are directly supervised by the board of supervisors (see *Ward, supra,* 70 Cal.App.3d at p. 35), the Commission's unique review function demands an independence which is specifically provided for in section 904.1 of the San Diego County Charter (as amended Dec. 17, 1982): "The Commission is the administrative appeals body for the County in personnel matters authorized by this Charter. Upon appeal, the Commission may affirm, revoke or modify any disciplinary order, and may make any appropriate orders in connection with appeals under its jurisdiction. The Commission's decisions shall be final, and *shall be followed by the County* unless overturned by the courts on appeal." (Italics added.) Thus, in the usual situation, we would expect that a conflict between or among county agencies would be resolved by the board of supervisors. Here, however, the conflict between the department of social services and the Commission cannot be resolved in the usual manner, because the County charter gives the Commission authority independent of the County's normal hierarchical structure. The board of supervisors has been forced to sue the Commission in an attempt to overturn its rulings.

■ We are able to accept the general proposition that a public attorney's advising of a constituent public agency does not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part. Nonetheless we believe an exception must be recognized when the agency lawfully functions independently of the overall entity. Where an attorney advises or represents a public agency with respect to a matter as to which the agency possesses independent authority, such that a dispute over the matter may result in litigation between the agency and the overall entity, a distinct attorney-client relationship with the agency is created.

### III

■ Notwithstanding the existence of an attorney-client relationship, the County argues that the Commission has failed to show county counsel obtained confidential information in the context of its prior representation of the Commission which it could now use on behalf of the County. Impliedly, the County contends that such a showing is necessary to support a disqualification order. ■ ■ ■ ■ While we believe there may be a distinct and independent reason for disqualifying the county counsel based on his ongoing professional relationship with the Commission, we address the County's argument solely as if it were presented in a "prior representation" case.[1]

---

[1]Our statement that there may be an independent basis to disqualify the county counsel is grounded on the general rule that an attorney may simply not undertake to represent an interest adverse to those of a current client without the client's approval. (*Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6, 10 [136 Cal.Rptr. 373]; *Cinema 5, Ltd.* v. *Cinerama, Inc.* (2d Cir. 1976) 528 F.2d 1384, 1386-1387; Cal. Rules of Prof. Conduct, rule 5-102.) This record establishes the relationship between county counsel and the Commission is an ongoing one with respect to matters other than the one at issue here. The principle precluding representing an interest adverse to those of a current client is based not on any concern with the confidential relationship between attorney and client but rather on the need to assure the attorney's undivided loyalty and commitment to the client. (*Jeffry, supra,* 67 Cal.App.3d at pp. 9-10; see also *Grievance Com. of Bar of Hartford County* v. *Rottner* (1964) 152 Conn. 59 [203 A.2d 82, 84].)

The attorney who represents a client with interests adverse to another current client encounters the very real danger "that he will be tempted, perhaps unconsciously, to favor the interests of a particularly important client over the adverse or potentially adverse interests of a less favored client." (*Developments in the Law—Conflicts of Interest in the Legal Profession* (1981) 94 Harv.L.Rev. 1244, 1296.) Here there is every reason to believe that county counsel would be tempted to favor the interests of the County in giving advice to the Commission. The Commission's primary, if not sole function, is to pass judgment on the conduct of the County toward its employees. Every Commission decision has the potential of being adverse to one of the County's constituent agencies. Because county counsel is directly responsible to the board of supervisors, it is difficult to conceive how any member of the county counsel's office can render independent advice to the Commission. The structure of the system would appear necessarily to skew such advice in favor of the County and against the county employees. And even in those circumstances where county counsel renders advice to the Commission favoring the employee, such advice places him in a position

 Numerous courts have recognized that the rule against a lawyer representing interests adverse to a former client is premised in large part on protecting the confidentiality of the attorney-client relationship. (See, e.g., *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 619 [120 Cal.Rptr. 253]; *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998.) The fiduciary nature of that relationship requires the application of strict standards. (*E.F. Hutton & Company* v. *Brown* (S.D.Tex. 1969) 305 F.Supp. 371, 394-395.) The client must have no fear that information disclosed to or obtained by the attorney in the course of the representation will in some way later be used against the client. This principle finds expression in rule 4-101 of the Rules of Professional Conduct of the State Bar of California: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

While the concept of confidentiality may be the touchstone of adverse prior representation analysis, other considerations are relevant as well. Courts have long been concerned about the prospect of a swearing contest between the attorney and former client as to whether the attorney had access to confidential information in the course of the former representation.[2] To avoid this problem, the "substantial relationship" test was developed: "[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action [where] the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

"To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual

---

adverse to his client, the County.

Our reluctance to rely solely or primarily on this "ongoing representation" analysis is admittedly tied to its absence from the *Deukmejian* opinion. Confronted with a similar situation—the Attorney General had ongoing attorney-client relationships with the respondent state agencies on matters unrelated to State Employer-Employee Relations Act—the Supreme Court analyzed the situation as a case of representation of interests adverse to those of a former client. (29 Cal.3d at pp. 155-156.)

[2]In fact, there will be numerous times when the attorney obtains confidential information in the course of the former representation from a source other than the client. In such circumstances, the attorney might be the only person whose testimony could establish whether confidential information was obtained. (See *Cord* v. *Smith* (9th Cir. 1964) 338 F.2d 516, 525.)

confidential matters previously entrusted to the attorney and their possible value in the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the [confidentiality] rule." (*T. C. Theatre Corp. v. Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, 268-269; see also *Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 488 [192 Cal.Rptr. 609].)

California courts have long applied the "substantial relationship" test as one part of a two-prong analysis to deal with adverse prior representation problems. ▆ As the Supreme Court explained in *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574 [15 P.2d 505], "[A]n attorney is forbidden to do *either* of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." (Italics added; see also *People* ex rel. *Deukmejian v. Brown, supra,* 29 Cal.3d at p. 155.) Thus, "actual possession of confidential information is not required for an order of disqualification" where there is a "substantial relationship" between the current and former representations.[3] (*Dill v. Superior Court* (1984) 158 Cal.App.3d 301, 304 [205 Cal.Rptr. 671]; see also *Arkansas v. Dean Foods Products Co., Inc.* (8th Cir. 1979) 605 F.2d 380, 386.)

▆ On the facts of the present case, of course, there is no question but that a "substantial relationship" is present. County counsel advised the Commission on precisely the same matter as to which the County is now suing the Commission. The County's argument that county counsel obtained no confidential information from the Commission is thus irrelevant. The same argument in an identical context was presented to the Supreme Court in the *Deukmejian* case and rejected in the following terms: "While the record here does not reveal whether the Attorney General acquired any knowledge or information from his clients, the prohibition is in the disjunctive: he may not use information *or* 'do anything which will injuriously

---

[3]Apparently believing that the disclosure of some relevant confidential information was necessary before a motion to disqualify could be granted, the trial court denied the Commission's motion based in part on its perception that all the issues in the lawsuit were of a legal rather than factual nature such that county counsel could not possibly be aware of confidential facts which it could use against the Commission. We have explained why such a disclosure is not necessary. Moreover, the trial court viewed the concept of confidential information in too narrow a manner. Here, for instance, county counsel's advisory role was an integral part of the Commission's deliberative process. Counsel may have learned things regarding the expectations or motives of Commission members in acting the way they did. Such information is not properly possessed by the adverse party's attorney in litigation.

affect his former client.' Unquestionably the Attorney General is now acting adversely to the position of his statutory clients, one of which consulted him regarding this specific matter."[4] (29 Cal.3d at p. 156; compare *id.*, at p. 166 (dis. opn. of Richardson, J.).)

It strikes us that this situation is not dissimilar from the case where an attorney undertakes to advise two clients on a single matter or transaction. The attorney may be either an intermediary, actively attempting to accommodate the clients' competing interest, or merely an advisor, explaining to the clients their legal options. In either case, if the matter later results in litigation, the attorney is precluded from representing either client. (See *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 900 [142 Cal.Rptr. 509]; *Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 537 [140 Cal.Rptr. 806]; *Brennan's Inc.* v. *Brennan's Restaurants, Inc.* (5th Cir. 1979) 590 F.2d 168, 171-172; *E.F. Hutton & Co.* v. *Brown, supra,* 305 F.Supp. at pp. 394-395; see also A.B.A. Model Rules of Prof. Conduct (1983) rule 2.3(c).)

Here, county counsel was advising both the Commission and the affected county agencies at the time of the McClure and Chapman investigations. In fact, the same attorney was assigned to advise both the Commission and the department of social services. To the extent that county counsel is ever permitted to place himself in such a position in the first place (see *ante,* fn. 1), it is clear if the situation escalates to litigation, he cannot remain as counsel for one of his clients in opposition to the other.[5]

---

[4]The County's reliance on *Ward* in this context appears to be misplaced. *Ward* involved a situation in which there was no substantial relationship between the issues in the prior and current representations. The assessor, Watson, nonetheless contended that information to which county counsel had previously been given access could be used against him. (70 Cal.App.3d at p. 34; see *Galbraith* v. *The State Bar* (1933) 218 Cal. 329, 332-333 [23 P.2d 291].) He was thus forced to invoke the second prong of the *Wutchumna Water Co.* analysis (see *ante,* p. 80), an attempt which was rejected by the *Ward* court on its facts. (70 Cal.App.3d at p. 35.)

[5]The County suggests that a "screening system" which divides county counsel's office between an advisory and a litigation division makes disqualification of the county counsel unnecessary. The problem here is not so much in screening the litigators from the advisors but rather in screening attorneys representing the Commission from attorneys representing the County. County counsel seems not to have perceived the conflict inherent at every stage of the proceedings—advisory and litigation—between the Commission and the County.

Moreover, the "screening" process has been suggested only in very limited circumstances where an attorney, disqualified from participation in a case as a result of his prior employment, is "sealed off" from the rest of his new firm in order to avoid disqualification of that firm. (See *Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893 [175 Cal.Rptr. 575]; compare *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042, 1049 [197 Cal.Rptr. 232].) Here, the Commission's relationship with county counsel is not limited to a single attorney who previously represented the Commission while employed by another law firm. The Commission's ongoing relationship with the entire office of county counsel, including Mr. Harmon himself, makes any attempted screening device inappropriate.

## IV

■ Having concluded that an attorney-client relationship existed between county counsel and the Commission with respect to the McClure and Chapman investigations, and having determined that county counsel faced a demonstrable conflict of interest both in advising the Commission and in now attempting to represent the County in litigation against the Commission, we must address the County's contention that the Commission has knowingly waived the conflict by approving an administrative policy which allows county counsel to simultaneously represent both the Commission hearing officer and the county agency in disciplinary hearings. Item number 0080-04-9 of the County administrative manual (hereafter Policy Statement No. 9), approved by the president of the Commission and effective on August 11, 1983, provides in relevant part as follows: "It is an official policy of the Commission that a County Counsel attorney may represent the hearing officer in a given hearing and another County Counsel attorney may represent the appointing authority. Such a policy is deemed legal and appropriate. However, if a hearing officer determines that any given representation constitutes a potential conflict of interest, the matter will be resolved at or prior to the hearing, or he/she will return to the full Commission for action."

Rule 5-102 of the Rules of Professional Conduct requires that an attorney obtain the informed written consent of his clients before undertaking any representation which involves even a potential conflict of interest. (See *Klemm* v. *Superior Court, supra,* 75 Cal.App.3d at p. 898; see also *E.F. Hutton Co.* v. *Brown, supra,* 305 F.Supp. at p. 388.) ■ For the client's consent to be informed, the attorney must "make a full disclosure of all facts and circumstances" relevant to the conflict, "including the areas of potential conflict and the possibility and desirability of seeking independent legal advice." (*Klemm, supra,* 75 Cal.App.3d at p. 901; see also *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788]; *Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 526-527, fn. 3 [50 Cal.Rptr. 592].)

■ We are unable to accept the County's contention that Policy Statement No. 9 constitutes an informed consent to county counsel's dual representation of the Commission and the County for a variety of reasons. First of all, the subject of the policy statement is limited to disciplinary hearings. The McClure and Chapman investigations which are the subject of this litigation were not disciplinary hearings. Rather, they were investigations by the Commission into the procedures utilized by the department of social services to accomplish layoffs and demotions in the wake of budget cuts which forced personnel reductions. (Compare County of San Diego Admin. Manual, item No. 0080-04-9 (discipline) with item No. 0080-04-16 (inves-

tigations).) Significantly, Policy Statement No. 9 speaks only of county counsel advising the Commission hearing officer *"in a given hearing . . . ."* Here there was no hearing officer and there was no hearing. Second, even if the policy statement could be interpreted to apply to an investigating commissioner in the context of an investigation, it can in no way be stretched to approve county counsel's representation of the County *in litigation* against the Commission, as has occurred here.

We also note that on this record there is no evidence that county counsel ever explained to the Commission the significant conflicts inherent in his simultaneous representation of the Commission and the County. ▇ The attorney who claims his client consented to a conflicting representation bears a heavy burden of demonstrating that all relevant facts relating to the conflict were disclosed and explained to the client. (See *Klemm* v. *Superior Court, supra,* 75 Cal.App.3d at p. 901.) ▇ The lack of disclosure here strongly indicates that any consent given by the Commission was not an informed one.[6] In any event, it clearly mandates that the scope of any claimed consent be narrowly construed against county counsel. We accordingly conclude that Policy Statement No. 9, applicable only to disciplinary hearings, in no way constitutes a consent to county counsel's conflicting representation of the Commission and the County in the present case.

V

While we have determined that county counsel must be disqualified from representing the County in this case, we wish to indicate the limits of our holding. First, it should again be emphasized that a conflict of this nature only arises in the case of and to the extent that a county agency is independent of the County such that litigation between them may ensue. Second, disqualification of county counsel is not necessarily mandated in future cases involving quasi-independent agencies. We have noted that a fundamental conflict arises whenever county counsel is asked to represent both the Commission and the County. Moreover, it is clear from the course of this case that county counsel, with good reason, views his primary responsibility as being to the board of supervisors. If the Commission is afforded access to independent legal advice, however, there is no reason county counsel may not continue to vigorously represent the County even when such represen-

---

[6]The record here demonstrates that during the McClure and Chapman investigations, the Commission communicated information to county counsel which it *believed* would be kept confidential. There is serious question whether information communicated to an attorney who is simultaneously representing potentially adverse clients is subject to a confidentiality claim. (See A.B.A. Model Rules of Prof. Conduct (1983) comment to rule 2.2, "Confidentiality and Privilege.") That this fact was not explained to the Commission supports the conclusion that any claimed consent was not "informed."

tation results in litigation against the Commission.[7] We need not and do not decide whether the Commission, appropriately informed and advised in a given case, could validly waive the conflict at the advisory stage.

We note finally that our decision in no way questions the honesty or integrity of the county counsel's office or any of the individuals involved in this case. At most, we deal here with a manifestation of the system's general insensitivity to conflict of interest questions as they affect the government attorney.[8] By our comments we do not mean to suggest that government attorneys must necessarily be treated identically with attorneys in private practice. But neither are they immune from conflict problems similar to those which confront the private bar. Our decision is but one small step in what should be a continuing process to develop standards of conduct which accurately reflect the realities of practice in the private and public sectors.

Let a peremptory writ of mandate issue compelling the superior court to order the office of San Diego County Counsel disqualified from further participation in this case.

Work, J., and Butler, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied February 27, 1985.

---

[7]Because of the variety of situations and the organizational differences of the public entities we hesitate to define solutions for the difficult problem which is best deferred to the thoughtful judgment of public counsel on a case by case basis.

[8]This is no doubt due in large part to the fact that the Rules of Professional Conduct are drafted almost exclusively from the perspective of the private practitioner.