**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEGACY VILLAS AT LA QUINTA HOMEOWNERS ASSOCIATION, a California non-profit mutual benefit corporation, | No. 12-57189 |
| | D.C. No. 5:11-cv-00845-VAP-OP |
| Plaintiff, | MEMORANDUM[*] |
| And | |
| PETERS & FREEDMAN, LLP, | |
| Movant - Appellant, | |
| v. | |
| CENTEX HOMES, a Nevada General partnership; CENTEX REAL ESTATE CORPORATION; CENTEX REAL ESTATE HOLDINGS LP, a Delaware limited partnership; NOMAS CORP, a Nevada corporation, | |
| Defendants - Appellees. | |

| | |
|---|---|
| LEGACY VILLAS AT LA QUINTA HOMEOWNERS ASSOCIATION, a California non-profit mutual benefit | No. 13-56241 |
| | D.C. No. 5:11-cv-00845-VAP-OP |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

corporation,

        Plaintiff,

    And

PETERS & FREEDMAN, LLP,

        Movant - Appellant,

    v.

CENTEX HOMES, a Nevada General
partnership; CENTEX REAL ESTATE
CORPORATION, a Nevada corporation;
CENTEX REAL ESTATE HOLDINGS
LP, a Delaware limited partnership;
NOMAS CORP, a Nevada corporation,

        Defendants - Appellees.

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted March 3, 2015
Pasadena, California

Before: PREGERSON, FERNANDEZ, and NGUYEN, Circuit Judges.

Appellant law firm Peters & Freedman, LLP appeals (1) the district court's

April 30, 2012 order disqualifying the law firm from representing La Quinta

Homeowners Association ("the Homeowners Association") against Centex Homes

("Centex"), and (2) the district court's November 7, 2012 order finding the law firm in contempt of the disqualification order.

We have jurisdiction under 28 U.S.C. § 1291.[1] Reviewing the orders for abuse of discretion, *see Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995); *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004), we reverse.

In 2004, Centex, a developer of residential properties, created the Homeowners Association to manage Legacy Villas, one of Centex's condominium communities. In the beginning, Centex employees served on the Homeowners Association's Board of Directors as the controlling majority.[2] In May 2006, the

---

[1] Centex argues that Peters & Freedman lacks standing to appeal the disqualification order and that the appeal of the disqualification order is moot. We disagree. By asserting an injury of its own, Peters & Freedman has standing to appeal the disqualification order. *Cf. In re Grand Jury Subpoena Issued to Chesnoff*, 62 F.3d 1144, 1145 (9th Cir. 1995) ("Appellants [lack standing because they] have not identified any right of their own that has been affected by the district court's order. Instead, by their own account, they seek to protect their client's right to counsel of his choice."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Despite the settlement of the underlying case, the appeal of the disqualification order is not moot because the disqualification order exposes Peters & Freedman to "further sanctions by the bar and portends adverse effects upon counsel's careers and public image." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 n.14 (11th Cir. 1985)).

[2] Between 2006 and 2008, three to four Centex employees served on the Board at any given time.

3

Homeowners Association retained Peters & Freedman as legal counsel. In May 2008, control of the Homeowners Association was turned over to the homeowners.

During the two year period from 2006-2008 in which Peters & Freedman represented the Centex-controlled Homeowners Association, Peters & Freedman attended four Homeowners Association Board meetings and assisted the Homeowners Association with collecting of delinquent homeowner assessments. Peters & Freedman also sent two letters to Board members who were Centex employees. One letter dated December 4, 2006 was sent to Sandy Duff on and contained advice on a property management agreement. A generic "Developer Transition Checklist" form was sent to Jayne Carilo and listed documents to be turned over to the new homeowners-controlled Homeowners Association.

After control of the Board was turned over to the homeowners on May 30, 2008, the Homeowners Association, represented by Peters & Freedman, filed two lawsuits against Centex. On September 13, 2010, in state court, the Homeowners Association brought a construction defect action against Centex. On April 14, 2011, also in state court, the Homeowners Association sued Centex for breach of fiduciary duty, alleging that the Centex-controlled Board mismanaged the Homeowners Association's budget and finances. Centex removed this lawsuit to federal court on June 1, 2011.

4

In March 2012, Centex moved to disqualify Peters & Freedman in the federal action. The district court granted the motion and disqualified Peters & Freedman on three grounds: a conflict of interest under California Rule of Professional Conduct 3-310(E), the advocate-witness rule, and the appearance of professional impropriety under Canon 9 of the Model Rules of Professional Responsibility. Peters & Freedman withdrew from representing the Homeowners Association in the federal action. The firm continued to represent the Homeowners Association in the state construction defect action.

On January 30, 2012, during discovery in the federal action, Centex subpoenaed records from Personalized Property Management ("PPM"), the Homeowner Association's property management company. In April 2012, PPM produced a disk to Centex containing all of the Homeowner Association's electronic records, including a significant amount of privileged materials related to both the state and federal actions. When Peters & Freedman contacted Centex's federal counsel regarding those privileged materials, the district court found Peters & Freedman in contempt of the disqualification order.

Peters & Freedman timely appealed both orders.

**1. The Disqualification Order**

A. Conflict of interest under California Rule of Professional Conduct 3-310(E)

Before an attorney may be disqualified under Rule 3-310(E) from representing a party in a suit that is adverse to a former client, the party seeking the attorney's disqualification must first establish that the attorney represented the party in a manner giving rise to an attorney-client relationship.[3] *Civil Serv. Comm'n v. Superior Court*, 163 Cal. App. 3d 70, 76-77 (1984).

The evidence offered by Centex and relied upon by the district court does not support the finding of an implied attorney-client relationship between Peters & Freedman and Centex. The letter addressed to Sandy Duff and the Developer Transition Checklist sent to Jayne Carilo provide advice to the recipients in their capacities as Homeowners Association Board members, not in their capacities as Centex employees. The declaration by Jayne Carilo, stating that she understood Peters & Freedman to be providing her advice in her capacity as a Centex employee, is also not persuasive evidence of an implied attorney-client relationship. Centex, as an experienced developer, could not have reasonably believed that Peters & Freedman represented Centex. *See Sky Valley Ltd. P'ship v.*

---

[3] Rule 3-310(E) states: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

*A.T.X. Sky Valley Ltd.*, 150 F.R.D. 648, 655 (N.D. Cal. 1993) ("We question whether a commercially sophisticated party that allegedly has a multi-million dollar interest in a project would form an attorney-client relationship without a shred of paper memorializing even the most basic terms of that alleged relationship.").

Moreover, the totality of the circumstances weighs against the existence of an implied relationship. The contacts between Peters & Freedman and Centex were limited in nature and quantity, there is no evidence that Centex employees divulged any confidential information to Peters & Freedman, and there is no evidence that Centex paid for any of Peters & Freedman's services. *See Fink v. Montes*, 44 F. Supp. 2d 1052, 1060 (C.D. Cal. 1999) (listing some factors to consider when evaluating whether an implied attorney-client relationship exists). Because no attorney-client relationship–implied or actual–existed between Peters & Freedman and Centex, Peters & Freedman should not have been disqualified under Rule 3-310(E).

B. The Advocate-Witness Rule

Under the advocate-witness rule, a lawyer cannot serve as an advocate in a trial in which the lawyer is likely to testify as a witness, unless an exception applies. Model Rules of Prof'l Conduct R. 3.7; Cal. R. of Prof. Conduct 5-210.

7

Because the advocate-witness rule lends itself to the "potential for abuse," motions to disqualify under this rule "should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

Centex has not established that disqualification would be proper under this rule, nor did the district court subject the motion to the appropriate level of scrutiny. Centex and the district court generally asserted that Peters & Freedman attorneys are all relevant witnesses to the extent that the attorneys have knowledge of the firm's actions in representing the Homeowners Association's Board, but Centex only specifically identified one Peters & Freedman attorney who would serve as a potential witness. Centex has not sufficiently demonstrated–nor did the district court ask–why *every* Peters & Freedman attorney is a necessary witness. The advocate-witness rule does not prohibit attorneys from serving as trial counsel in a trial where an attorney from the same firm will testify. *See* Model Rules of Prof'l Conduct R. 3.7(b); Cal. R. of Prof. Conduct 5-210.

After considering the improbability that all Peters & Freedman attorneys were necessary witnesses, that this case was scheduled for a bench trial, and the client's right to representation by an attorney of his or her choosing, we find that disqualification of all Peters & Freedman attorneys under the advocate-witness rule

8

was not called for. *See Lyle v. Superior Court*, 122 Cal. App. 3d 470, 481-83 (1981).

    C. Appearance of Impropriety under Canon 9 of the Model Code of Professional Responsibility

"Although this court has held that Canon 9 alone can be a sufficient ground for disqualification, the circumstances are extreme, i.e., when the alleged impropriety is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties' interests in counsel of their own choice." *Optyl Eyewear Fashion Int'l Corp.*, 760 F.2d at 1049. Disqualification under Canon 9 is not warranted in this case.

## 2. The Contempt Order

Because we find that the district court's disqualification order is invalid, we also find that the contempt order is invalid. *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) ("The validity of a contempt adjudication is based on the legitimacy of the underlying order.").

For these reasons, we **REVERSE** the disqualification order and **VACATE** the contempt order and sanctions. Costs are awarded to Peters & Freedman.

9