BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE DARRELL STEINBERG, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. Do the "whistleblower" statutory protections applicable to employees of state and local public entities supersede the statutes and rules governing the attorney-client privilege?
2. Do the statutory provisions relating to the disclosure of false claims actions, communications with the Legislature, and the filing of complaints or claims or the institution of proceedings pertaining to the rights of employment by employees of state and local public entities supersede the statutes and rules governing the attorney-client privilege?
 CONCLUSIONS
1. The "whistleblower" statutory protections applicable to employees of state and local public entities do not supersede the statutes and rules governing the attorney-client privilege.
2. The statutory provisions relating to the disclosure of false claims actions, communications with the Legislature, and the filing of complaints or claims or the institution of proceedings pertaining to the rights of employment by employees of state and local public entities do not supersede the statutes and rules governing the attorney-client privilege.
 ANALYSIS
The present inquiries concern the interplay between two distinct public policies — one in favor of the disclosure of information to appropriate authorities and the other in favor of the privilege against disclosure of such information — as they pertain to the employment of public agency attorneys. Under what circumstances, if any, does the one policy affect the other?
There are three provisions that define the policy favoring the privilege against the disclosure of information by attorneys. Business and Professions Code section 6068 provides in part:
 "It is the duty of an attorney to do all of the following:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(e) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The duty described in subdivision (e) lies at the core of the fiduciary relationship that an attorney has with a client, the violation of which may result in disciplinary action against the attorney. (General Dynamics Corp. v. Superior Court (1994) 7 Cal.4th 1161[7 Cal.4th 1164], 1190-1191.)
Evidence Code section 954 additionally provides:
 "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . ."
The privilege set forth in the Evidence Code section 954 is strictly evidentiary, arising in the context of a judicial proceeding. The ethical duty of confidentiality described in Business and Professions Code section 6068, on the other hand, is much broader and covers communications not protected by the evidentiary privilege. (Goldstein v. Lees (1974) 46 Cal.App.3d 614, 621, fn. 5.)
The third provision relating to client confidentiality is rule 3-600 of the California State Bar Rules of Professional Conduct ("rule 3-600"), which provides:
 "(A) In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement.
 "(B) If a member acting on behalf of an organization knows that an actual or apparent agent of the organization acts or intends or refuses to act in a manner that is or may be a violation of law reasonably imputable to the organization, or in a manner which is likely to result in substantial injury to the organization, the member shall not violate his or her duty of protecting all confidential information as provided in Business and Professions Code section 6068, subdivision (e). Subject to Business and Professions Code section 6068, subdivision (e), the member may take such actions as appear to the member to be in the best lawful interest of the organization. Such actions may include among others:
 "(1) Urging reconsideration of the matter while explaining its likely consequences to the organization; or
 "(2) Referring the matter to the next higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest internal authority that can act on behalf of the organization.
 "(C) If, despite the member's actions in accordance with paragraph (B), the highest authority that can act on behalf of the organization insists upon action or a refusal to act that is a violation of law and is likely to result in substantial injury to the organization, the member's response is limited to the member's right, and, where appropriate, duty to resign in accordance with rule 3-700.
 "(D) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent.
 "(E) A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members."
In examining these three provisions in any given case, a threshold issue would arise concerning identification of the "client" of a government employed attorney. (Bus. Prof. Code, §6068, subd. (e) [the secrets of a client must be preserved; the confidence of a client must remain inviolate]; (Evid. Code, § 954 [the client has a privilege to prevent another from disclosing confidential information]; rule 3-600 ["In representing an organization. . ."].) Rule 3-600 suggests that the client is the "organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement," but offers no further guidance specifically with respect to government agencies. Who, for example, is the client in a case in which the Medical Board of California is a named party — the board itself, its executive director, the Department of Consumer Affairs of which the board is a part, the State and Consumer Services Agency in which the department is situated, or possibly someone else such as the Governor? Does it depend upon the type of litigation being prosecuted or defended? Who is the client where an attorney is employed by one agency of a government, for example, a county counsel or the Attorney General, to represent another agency of that government, for example, a county airport commission or the California Horse Racing Board?
In Ward v. Superior Court (1977) 70 Cal.App.3d 23, 35, the court held that the client of the county counsel was the county, acting through its board of supervisors, as to whom the county counsel's communications with the county assessor were not privileged. In 80 Ops.Cal.Atty.Gen. 127, 138 (1992), we concluded that when a county counsel takes a position in favor of the interests of the board of supervisors and adverse to the interests of the sheriff, the sheriff may be entitled to legal representation in that matter by independent counsel.
In Civil Service Com. v. Superior Court (1984) 163 Cal.App.3d 70, 78, the court accepted the general proposition that a public attorney's communications with a constituent public agency do not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part. The court recognized an exception, however, where an attorney advises a public agency with respect to a matter over which the agency possesses independent authority, such that a dispute may result in litigation between the agency and the overall entity, in which case a distinct attorney-client relationship with the agency would be created.
In People ex rel. Deukmejian v. Brown (1981) 29 Cal.3d 150, 154, the Supreme Court noted that the Attorney General had the statutory duty to defend all cases in which the state or one of its officers was a party and thus "was by law the designated attorney for the Governor and the State Personnel Board, as well as for the other state officers and agencies involved" in the litigation. In D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 15, the court recognized "the scope of the Attorney General's dual role as representative of a state agency and guardian of the public interest" which might lead to a conflict for the Attorney General in taking contrary positions.
In some respects, rule 3-600 appears designed to meet the concerns of the private sector better than the concerns of public practice. For example, a private attorney acting on behalf of an organization, who knows that an agent of the organization is acting unlawfully in a manner reasonably imputable to the organization, "shall not violate his or her duty of protecting all confidential information" and may ultimately be duty-bound to resign. (Rule 3-600, subds. (B), (C).) State officers, on the other hand, must be aware that the Attorney General, acting in the public interest, may investigate and prosecute criminal activity or other improprieties in which they are engaged. (See, e.g., Gov. Code, §§12652, 91001.) The Attorney General may bring an action against a state agency the activities of which imperil natural resources. (Gov. Code, §§ 12604, 12607.) The same is true of governmental actions that imperil Native American sacred places on public lands. (Pub. Resources Code, §§ 5097.9,5097.94, , 5097.97.) State officers may be sued by the Attorney General in quo warranto proceedings (Code Civ. Proc., § 803; People v. Wells (1852) 2 Cal. 198) or to ensure compliance with the law (See e.g., Marshall v. Dunn (1886) 69 Cal. 223 [action against State Controller]; People v. Curry (1900) 130 Cal. 82 [action against Secretary of State]).
In any event, it would be impossible to consider all the factors that might attend the public interest or examine all unique features of public practice; indeed, we are not presented with any particular case or set of circumstances to be analyzed. Rather, the two questions presented assume the existence of an attorney-client privilege, with the sole issue relating to the effect upon the privilege of various statutes.
1. Whistleblower Statutes
With respect to the first inquiry, our attention is directed to three statutory "whistleblower" enactments: the California Whistleblower Protection Act (Gov. Code, §§ 8547-8547.12; "CWPA"), the Whistleblower Protection Act (Gov. Code, §§ 9149.20-9149.23; "WPA"), and the Local Government Disclosure of Information Act (Gov. Code, §§ 53296-53299; "LGDIA"). Each calls for the disclosure of information in the public interest.
With regard to the CWPA, the Legislature has declared that state officers and employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution, and that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business. (Gov. Code, § 8547.1.) Inasmuch as the term "employee" includes any person employed or holding office in a state agency (Gov. Code, § 8547.2, subd. (a)), it includes attorneys employed by the state. The use of official authority or influence by an employee to interfere with a protected disclosure is prohibited. (Gov. Code, §8547.3, subd. (a).)
With regard to the WPA, the Legislature has declared that state employees and other persons should disclose to a legislative committee, to the extent not expressly prohibited by law, improper governmental activities. (Gov. Code, § 9149.21.) Since the term "employee" includes any person employed by or holding office in a state agency, public entity, or agency of local government, as defined (Gov. Code, § 9149.22, subd. (b)), it includes attorneys employed by any such state agency, public entity, or agency of local government. The use of official authority or influence to interfere with the right of any person to disclose improper governmental activities to an investigating committee of the Legislature is prohibited. (Gov. Code, §9149.23.)
With regard to the LGDIA, the Legislature has found that protection must be provided to public employees who speak out against violations of public laws, rules or regulations, gross mismanagement or a significant waste of public funds, abuse of authority, or a substantial and specific danger to the public health and safety. (Stats. 1986, ch. 353, § 1.) Because as the term "employee" includes any person employed by a "local agency," including cities, counties, districts, public corporations, political subdivisions, or public agencies of the state (Gov. Code, §53296, subds. (a), (e)), it includes attorneys employed by such entities. Any reprisal action by a local agency officer, manager, or supervisor against any employee for filing a complaint with the local agency as provided in Government Code section 53297 is prohibited. (Gov. Code, § 53298.)
Do the provisions of the CWPA, WPA, or LGDIA supersede the statutes and rules governing the attorney-client privilege? Do they authorize a public agency attorney to disclose what the attorney-client privilege would require to be kept confidential? We conclude that the Legislature did not, by the enactment of the three statutory schemes, intend to supersede or impair the attorney-client privilege.
First, statutory reconciliation between the whistleblower statutes and the attorney-client privilege is directed by the precept that statutes must be harmonized to the extent possible both internally and with each other, and construed in the context of the entire system of which they are a part. (Walnut Creek Manor v. Fair Employment Housing Com. (1991)54 Cal.3d 245, 268; People v. Woodhead (1987) 43 Cal.3d 1002, 1009; 79 Ops.Cal.Atty.Gen. 128, 131 (1996).) Indeed, certain provisions of the CWPA, WPA, and LGDIA indicate that they were not intended to supersede the attorney-client privilege. For example, the CWPA provides that its prohibition shall not be deemed to diminish any right, privilege, or remedy under state or federal law of an individual in the exercise of official authority. (Gov. Code, § 8547.8, subd. (f).) Hence, a public officer or employee of a state agency may insist upon and enforce the right and privilege attached to attorney-client confidences. The WPA provides that state employees and other persons should disclose "to the extent not expressly prohibited by law" improper governmental activities. (Gov. Code, § 9149.21.) In addition, both the CWPA and the WPA provide that the prohibitions shall not be construed to authorize the disclosure of information otherwise prohibited by or under law. (Gov. Code, §§ 8547.3, 9149.23.) The LGDIA provides that it is not intended to prevent a local agency from taking action against an employee where the agency reasonably believes that the action is justified on the basis of independent evidence showing that the employee's complaint has disclosed information from records which are closed to public inspection pursuant to law or has disclosed information which is confidential under any other provision of law. (Gov. Code, § 53298, subd. (b)(2), (3).)
Second, it is to be presumed that when the Legislature intends to supersede a strong and long established public policy, it will do so in express and unequivocal terms and not by mere implication. (79 Ops.Cal.Atty.Gen. 112, 117 (1996); 78 Ops.Cal.Atty.Gen. 253, 260 (1995).) As noted at the outset, an attorney's duty to maintain inviolate the confidences of a client lies at the core of the attorney-client relationship and of our legal system. Thus, in People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135,1146, the court stated:
 "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring `"the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 599.) To this end, a basic obligation of every attorney is `[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' (Bus. Prof. Code, § 6068, subd. (e).)"
Accordingly, we may not conclude that the Legislature, by the enactment of the three whistleblower statutory schemes, intended to supersede or impair by mere implication the strong and long established public policy in support of the attorney-client privilege. In General Dynamics Corp. v. Superior Court, supra, 7 Cal.4th 1161[7 Cal.4th 1164], the court stated: "Except in those rare instances when disclosure is explicitly permitted or mandated by an ethics code provision or statute, it is never the business of the lawyer to disclose publicly the secrets of the client." (Id. at p. 1190, italics added.) Further, the fiduciary qualities of mutual trust and confidence that underlie the professional relationship may be protected by limiting any impairment thereof to cases "grounded in explicit and unequivocal ethical norms embodied in the Rules of Professional Responsibility and statutes. . . ." (Id. at p. 1189.) The principle applies, therefore, that those charged with the administration of a particular statutory responsibility must take cognizance of and effectuate, or at least refrain from acting in derogation of, other valid governmental policies. (Zabel v. Tabb (5th Cir. 1970) 430 F.2d 199, 209; 78 Ops.Cal.Atty.Gen. 171, 175 (1995).)
Third, it is well established that a statute should be construed in the light of constitutional constraints. (Young v. Haines (1986) 41 Cal.3d 883,898; 79 Ops.Cal.Atty.Gen. 248, 250 (1996).) Here, a contrary conclusion would invite constitutional scrutiny which the Legislature, in our view, did not envision. Specifically, the power to regulate the practice of law has been recognized to be among the inherent powers of the courts; the courts are vested with the exclusive power to control the admission, discipline, and disbarment of persons entitled to practice before them. (Santa Clara County Counsel Attys. Assn. v. Woodside (1994) 7 Cal.4th 525,543.) While the Legislature may, to a "reasonable degree," regulate and control the practice of law (Hustedt v. Workers' Comp. App. Bd. (1981)30 Cal.3d 329, 337) and put reasonable restrictions upon the constitutional functions of the courts, it may not defeat or materially impair the exercise of those functions (id. at p. 338; Brydonjack v. State Bar (1929) 208 Cal. 439, 444). Although the Supreme Court has not held unconstitutional a statute of general application "which does not affect the traditional areas of attorney admission, disbarment and discipline" (Santa Clara County Counsel Attys. Assn. v. Woodside, supra, 7 Cal.4th at p. 544), an interpretation of the CWPA, WPA, and LGDIA that would preclude the imposition of discipline for conduct in violation of attorney-client confidences might well be found to materially impair an exclusive judicial concern and overstep constitutional bounds.
For the foregoing reasons, we conclude that the whistleblower statutory protections applicable to employees of state and local public entities do not supersede the statutes and rules governing the attorney-client privilege.
2. Other Related Statutes
With respect to the second inquiry, our attention is directed to four additional statutory schemes. First, under the False Claims Act (Gov. Code, §§ 12651-12655), any person who knowingly presents to the state or a political subdivision a false claim, or who knowingly makes or uses a false record or statement to obtain the approval or payment of such a claim, or who conspires to defraud the state or a political subdivision by allowing or paying such a claim, is liable to the state or political subdivision for three times the amount of damages thereby sustained, in addition to costs and penalties. (Gov. Code, §12651.) The taking of any adverse employment action against an employee because of his disclosure to a law enforcement agency of the making of a false claim is prohibited. (Gov. Code, § 12653.) It will be assumed here that the attorney-client privilege would apply to a publicly employed attorney who discloses the making of a false claim. (Compare, e.g., Evid. Code, § 956 ["There is no privilege . . . if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or fraud"].)
Second, Government Code section 19251.5 provides that all state and state university employees have the right to communicate with members and employees of the Legislature, and that such right constitutes a defense to any retaliatory adverse employment action for doing so.
Third, Labor Code section 98.6 prohibits any person from discharging or discriminating against any employee because such employee has filed a bona fide complaint or claim or action pertaining to his rights which are under the jurisdiction of the Labor Commissioner.
The fourth and final statute, Labor Code section 1102.5, prohibits any employer from retaliating against an employee for disclosing information concerning a violation of state or federal law to a government or law enforcement agency. The term "employee" is defined to include any individual employed by a state or local public entity (Lab. Code, § 1106), and therefore includes attorneys employed by any such entity. Labor Code section 1102.5 expressly excludes from its application retaliatory actions against employees who violate the attorney-client privilege as defined in section 950 of the Evidence Code.
The discussion in connection with the first inquiry, concerning the strong presumption against the implied repeal of longstanding, established public policy, and against the construction of legislation so as to suggest, in less than unequivocal terms, a serious constitutional issue, would likewise pertain to the four statutes considered here. Our conclusion to the second question must necessarily follow the conclusion that we reached in answer to the first question.
It is concluded, therefore, that the statutory provisions relating to the disclosure of false claims actions, communications with the Legislature, and the filing of complaints or claims or the institution of proceedings pertaining to the rights of employment by employees of state and local public entities do not supersede the statutes and rules governing the attorney-client privilege.