Filed 12/21/20  Mar v. Malette CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GREGORY MAR,<br><br>    Petitioner and Appellant,<br>v.<br><br>ANTOINETTE MALETTE et al.,<br><br>    Respondents. | A158766<br><br>(San Francisco County<br>Super. Ct. No. PTR19302661)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

It is ordered that the opinion filed herein on November 23, 2020, be modified as follows:

1.     On page 1, the words "About a year later" are deleted and replaced with the words "About ten months later".

2.     On page 3, the words "Their initial consultation was with attorney Winnie Loh on August 22, 2016" are deleted and replaced with the words "They met with attorney Winnie Loh on August 22, 2016".

3.     On page 9, delete from the first sentence the phrase "had never identified anyone willing to live with him as a paying roommate in the house

1

in its current condition," so that the sentence states: "By this point, Gregory had prevented his sisters from decluttering the home and had never come up with a viable alternative to selling the house."

4. On page 12, in footnote 8, insert the word "pertinent" before "authority" in the second sentence of the footnote so that the sentence reads: "We disregard this point, however, because it is not supported by any legal argument, pertinent authority or discussion."

5. On page 26, replace with words "on a pro bono basis" with the words "without regard to any expectation of payment".

There is no change in the judgment. Appellant's petition for rehearing and request for judicial notice are denied.

Dated: _____          _____
                                    Kline, P.J.

*Mar v. Malette* (A158766)

Filed 11/23/20  Mar v. Malette CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GREGORY MAR,<br><br>        Petitioner and Appellant,<br><br>v.<br><br>ANTOINETTE MALETTE et al.,<br><br>        Respondents. | A158766<br><br>(San Francisco County<br>Super. Ct. No. PTR19302661) |

This is an appeal from an order denying a motion to disqualify counsel, in a dispute between three siblings, all of limited financial means, over the administration of their late father's trust.

Before the trust dispute ripened into litigation, all three siblings had been represented jointly concerning trust matters by a single law firm.  But eventually the law firm ceased representing the brother because of disagreements with his sisters and with the law firm's advice.  The law firm continued to represent the sisters thereafter, but without securing the brother's informed written consent.  About a year later, when the brother initiated these proceedings against his sisters regarding the trust dispute and sought disqualification of the law firm, the trial court recognized the law firm had a conflict of interest.  However, the court concluded that the brother's right to seek disqualification of the law firm had been waived, because he delayed seeking disqualification for too long and disqualifying the

1

sisters' counsel at that point would be extremely prejudicial to them given their inability to afford new counsel.

Reviewing the trial court ruling for abuse of discretion, we affirm.

## BACKGROUND

### A. Hedani Choy's Engagement

The siblings, appellant Gregory Mar and his two sisters, respondents Veronica Mar Ligne and Antoinette Mallette, are co-trustees and the sole beneficiaries of their father's trust (the Raymond L. Mar Revocable Trust).[1] Antoinette, age 66, lives in a mobile home in Sonoma, California, on a fixed monthly income of less than $1,500, with no material liquid assets. Veronica, age 64, works as a waitress in San Francisco, lives in a 2-bedroom rental apartment and also has no material liquid assets. Gregory, age 62, is disabled and cannot work.

The trust's main asset is a single-family residence in San Francisco in which Gregory lived with his parents until their deaths and where he still resides. The trust gives Gregory a rent-free, lifetime right of occupancy in the family home and provides that, after his death, the home passes to his sisters (or their descendants). It requires the three siblings (or their heirs) to pay an equal one-third share of the home's carrying costs (all "property taxes, assessments, insurance, and ordinary or extraordinary repairs and improvements, if any"); prohibits Gregory from renting any part of the home or allowing anyone to live with him "without the unanimous consent of the trustees"; and prohibits any sale, transfer, encumbrance or assignment of any interest in the home without "the unanimous consent of Gregory and the

---

[1] For ease of identification, we will refer to the siblings here by their first names in order to distinguish readily between brother, on the one hand, and his sisters. We mean no disrespect.

2

trustees." Gregory's right to live in the family home is subject to certain terminating events, however, including his "failure to pay the expenses associated with the property within thirty days after written demand is made by the trustees."

Raymond Mar died in July 2016, and the following month, the siblings retained the law firm of Hedani, Choy, Spalding & Salvagione (Hedani Choy or the firm) to represent all of them, jointly, in their capacity as co-trustees in connection with the administration of their father's trust.

Their initial consultation was with attorney Winnie Loh on August 22, 2016, at which time it was immediately apparent the trust had a liquidity problem.[2] Loh reviewed the trust's provisions with the siblings during the meeting and evaluated the trust's financial situation. She concluded the trust's liquid assets (then, about $40,000) were insufficient to support Gregory's occupancy trust on an ongoing basis, and that none of the siblings would be financially able to do so once the trust's liquid assets had been exhausted. Among other carrying costs, the house was encumbered by an approximately $84,000 home equity line of credit, with around $800 in monthly interest payments. Loh recommended they consider selling the home and distributing the proceeds equally among them, and that they meet with a financial planner to discuss how to manage Gregory's share (which would pass to a special needs trust managed by his sisters) to support his living situation after sale of the house. Loh estimated the house might be worth approximately one million dollars, yielding approximately $300,000 for each beneficiary. She recommended giving Gregory two months to explore

---

[2] At the time, Loh's surname was Kwong. We refer to her here by her current name, which she used in declarations filed below.

3

alternatives to selling the home, and he agreed the house would have to be sold if he couldn't come up with a viable alternative.

The following day Loh emailed a written engagement letter to the three siblings dated August 23, 2016, which they promptly signed (on August 26) and returned to her.

The Hedani Choy engagement agreement specified that the firm represented the siblings only as co-trustees of their father's trust, and Loh told them she did not represent any of them individually. The engagement letter did not advise the siblings as to whether their interests actually or potentially conflicted and did not seek a waiver of any known or anticipated potential conflicts of interest; it was silent on the entire subject. None of the siblings thereafter signed any written waiver of actual or potential conflicts of interest between them. The firm agreed to bill for its services on an hourly basis, with a $1,000 retainer and at hourly attorney billing rates ranging from $325 to $425.

Confusingly, before the siblings executed the August 23 engagement agreement, Loh also emailed a second, more detailed proposed engagement letter to them on August 24, 2016 and asked them to execute it, but they never did. Among other provisions, the unsigned August 24, 2016 proposed engagement letter listed a number of limitations on the scope of the firm's services, including excluding from the representation services relating to the siblings' "personal interests with respect to any disputes with . . . beneficiaries which may occur in connection with [the] administration of the trust." On the subject of conflicts of interest, it stated the following: "While there is nothing at this point to suggest [a] potential conflict of interest exists, it is possible that during the course of this matter issues may arise

4

which create [a] conflict of interest.  In that event, we will be forced to withdraw from our representation of you."

Within months of the initial consultation, the potential conflict of interest became an actual one.  By the end of October 2016, the sisters wanted to sell the house; Gregory informed Loh he wanted to take on a roommate to generate rental income but his sisters would not allow him to do that.

The house was in deplorable, squalid condition.[3]  Gregory was a hoarder, and the house was so cluttered his sisters considered it to be unrentable.  In addition, the prospect of taking on a paying roommate in those circumstances created liability exposure for them as co-trustees they did not want to assume.

Things deteriorated so badly that on November 9, 2016, Gregory told Loh he wanted to petition to have Veronica and Antoinette removed as trustees.  During approximately the next year, Gregory repeatedly expressed to Loh dissatisfaction with his sisters' actions as trustees in managing the trust.[4]

---

[3]  Over the next two years, Gregory would repeatedly admit in emails the house was in "disrepair", at one point elaborating that "we can't charge much [for a roommate], with unfinished construction, electrical and plumbing."  And about two years later, on October 1, 2018, he even alleged in a verified pleading the property was not habitable, because it was infested with rodents, cockroaches and insects, and had damp walls, peeling paint, cracks, a defective electrical system, inadequate heat, mold, and holes in the walls.

[4]  He told Loh for a second time (on December 5, 2016) that he wanted to petition to have his sisters removed as trustees, and told her twice (on February 2 and November 12, 2017) that he wanted to modify the trust in various ways and that his sisters were treating him unfairly and mismanaging trust assets.

For her part, Loh advised Gregory (on January 18, 2017) to retain independent counsel if he was " 'unhappy with the process.' " Nine months later, on October 30, 2017, she advised him that his interests conflicted with those of his sisters and recommended the co-trustees petition to the probate court for instructions. For reasons not reflected in the record, that did not happen.

Instead, the situation further deteriorated. Concerned with the depletion of the trust's assets, Loh concluded the co-trustees' only viable option was to sell the house. On December 12, 2017, she emailed the siblings her recommendations (proposing they transfer title of the house to the sisters individually and as trustees of Gregory's special needs trust to accomplish a sale), and advised them that anyone who disagreed with the firm's recommendations "will need to retain his or her own separate attorney, and will waive objection of the right of our firm to represent the remaining trustee(s)."

A month and a half later, Gregory ended his engagement with Hedani Choy. On January 31, 2018, Loh emailed the siblings to tell them she had scheduled a meeting with realtors to move forward with a sale of the house, and Gregory promptly sent a reply email stating "I'm firing her right now."

He subsequently attended a meeting with his sisters and agreed to allow them to inspect the home with a realtor, but then he cancelled the walk-through and refused to allow his sisters and their agent to have access to the property.

After that, Gregory briefly sought the assistance of a new attorney, Gregory Lazar, in late March 2018, who told Loh in an email he could not

6

represent Gregory on a long-term basis but would to try help him and his sisters "get on the same page with respect to moving forward."[5]

On May 8, 2018, Loh wrote to Gregory "confirm[ing]" that the firm no longer represented him and that it now only represented his sisters as co-trustees. She told him a copy of the letter was originally sent to Lazar who had informed her he did not represent Gregory, and she advised Gregory to obtain his own counsel. The letter demanded he pay $15,414 within one month to reimburse the trust for his one-third share of expenses incurred since the date of their father's death, and demanded he make the home available to his sisters and their agents for inspection on June 8, 2018.

Gregory did not pay, and on the date scheduled for the inspection, he would not let them in, threatened to call the police and said he would never leave or sell the home. Subsequently, in July 2018, his sisters transferred title of the home to themselves as individuals and as trustees of Gregory's special needs trust.

Then, represented by a different law firm (the Law Offices of Daniel Borstein), they initiated an unlawful detainer action against Gregory in September 2018 in an effort to evict him from the family home. Gregory retained counsel to defend him in the unlawful detainer action (Michael Spalding, of the Justice and Diversity Center of the Bar Association of San Francisco), which was dismissed without prejudice about six months later, in March 2019.

On October 18, 2018, while the unlawful detainer action was pending, Gregory on his own behalf sent a letter to his sisters in care of the Hedani Choy firm demanding an accounting of trust assets. The letter was

---

[5] Lazar's March 25, 2018 email to Loh appears to be the only evidence in the record of his involvement in this matter.

7

addressed to them "c/o" the law firm, and he concluded the letter by telling them, "You might want to contact a lawyer to discuss your legal rights and responsibilities." At a trial call in the eviction action on October 29, the subject of mediation was discussed between counsel, and the sisters' litigation counsel told Gregory's attorney that the sisters were willing to provide an accounting. The following month, on November 14, Gregory's attorney Spalding reiterated the request for an accounting, telling the sisters' counsel that "[t]his case will have very little chance of settling" without one.

Around the same time, on November 8, 2018, the city issued a Notice of Violation for the property because of badly peeling and damaged exterior paint.

At some point the following month, in December 2018, Gregory retained new pro bono counsel through the San Francisco Bar Association, Ciarán O'Sullivan, to represent him in connection with filing a petition to reform the trust, compel an accounting and remove his sisters as co-trustees. Gregory's two attorneys communicated with Hedani Choy about scheduling a mediation. On December 26, 2018 (and again on January 3, 2019), O'Sullivan contacted Hedani Choy to request copies of any written conflict of interest waivers the firm had obtained from the siblings, telling the firm he assumed such documentation existed but could not locate it. He received no response. On January 3, 2019, O'Sullivan agreed to mediation on Gregory's behalf on the condition it was without waiver of Gregory's right to seek disqualification of the Hedani Choy firm. The mediation took place the following month, on February 5, 2019, and the parties did not settle.

Seven days later, the last of the trust's liquid assets were depleted with a partial payment of the monthly HELOC bill.

By this point, Gregory had prevented his sisters from decluttering the home, had never identified anyone willing to live with him as a paying roommate in the house in its current condition, and had never come up with a viable alternative to selling the house.

**B. This Litigation**

A month after the failed mediation, on March 7, 2019, Gregory, represented by his pro bono counsel, initiated these proceedings. In his capacity both as a beneficiary and co-trustee, he filed a petition asking for modification of the trust to enable him to rent out part of the home, removal of his sisters as co-trustees, an order voiding the deed transferring title of the home out of the trust, an order declaring forfeited his sisters' interests as contingent beneficiaries of the trust, and other related relief. In addition, he requested that the Hedani Choy firm immediately be disqualified from any further representation of his sisters if the firm made an appearance in the case.[6] The superior court set a briefing schedule and held several hearings.

Meanwhile, in May 2019, while the briefing was underway, Hedani Choy appeared on Veronica's behalf in separate litigation Gregory had initiated seeking a domestic violence restraining order against her for an alleged assault. When Gregory's pro bono attorneys discovered this, they specially appeared and sought disqualification of the Hedani Choy firm in that case too, and on June 10, 2019, the superior court disqualified it from

---

[6] At a later hearing on the disqualification issues, he asked to disqualify the firm "in any matter relating to or arising out of the trust administration."

9

representing Veronica in that case. After the hearing, it denied Gregory's request for a restraining order.[7]

The final hearing on disqualification in this case took place on July 11, 2019, and the court heard extensive argument. The court ruled orally from the bench that the siblings had a potential conflict of interest from the outset of the representation due to the nature of their interests under the trust, with Gregory having a lifetime right of occupancy in the home, and that (at an unspecified point) the potential conflict of interest became an actual one. It also found there was never any informed written consent. It then turned to the question of "delay and prejudice," entertained argument on that issue and took the matter under submission.

On August 13, 2019, the court entered a 10-page order denying Gregory's request to disqualify the firm. Its written order reiterated that Gregory had never agreed in writing to allow Hedani Choy to represent his sisters against him in subsequent litigation. But it found that Gregory had waived his objections to the adverse representation, because he had unreasonably delayed in seeking the firm's disqualification and his sisters would be extremely prejudiced if their attorneys were disqualified because they cannot afford to hire replacement counsel.

The court calculated Gregory's delay before he sought the firm's disqualification in March 2019 from several starting points. (1) The court found Gregory had delayed for 15 months, as measured from the firm's December 12, 2017 email recommending a sale of the home and telling the siblings that anyone who disagreed should seek separate counsel. (2) It

---

[7] Respondents' request filed April 1, 2020, asking us to take judicial notice of a portion of the transcript of that hearing, previously taken under submission, is granted.

10

found he had delayed for 10 months, measured from the time the firm sent Gregory its May 8, 2018 letter terminating its representation and telling him it would continue to represent his sisters. (3) It also noted Gregory was aware in October 2018 the firm continued to represent his sisters because he sent a demand for a trust accounting to his sisters through the law firm, thereby implying a delay of about five months. And (4), the court adverted to events as far back as "late 2016," thereby implying a delay of several years, finding Gregory "knew that his interests and expressed desires as to the Trust administration were in conflict with his duties as a co-trustee, with the law firm's recommendations, and with his co-trustees' determinations as to the Trust administration since at least late 2016, and was advised to seek separate counsel as early as January 2017."

The court also made a number of other findings relating to the subject of delay. It found Gregory "appears to have been represented by various attorneys since approximately Spring of 2018, following the termination letter," including his first attorney who "appears to have subsequently withdrawn" from the representation and then by separate counsel in the September 2018 unlawful detainer action. The court also found there was no showing Gregory had been prevented from objecting to or opposing Hedani Choy's continued representation of his co-trustees prior to March 2019, nor any showing that opposing the firm's continued representation earlier would have been improper or futile. Therefore, it found Gregory had unreasonably delayed in seeking the firm's disqualification "in this Trust matter."

In finding that disqualification would cause extreme prejudice, the court referred to the sisters' declarations stating they lacked the financial resources to hire new counsel because the trust assets had been depleted and they lacked the personal resources to do so. The court acknowledged that

11

parties could appear pro per, but acknowledged that self-represented parties are at a "marked disadvantage" in litigating against a represented party. The court also found that the petition to disqualify counsel was being used "more as a sword than a shield," as evidenced by the fact Gregory's petition not only sought various forms of relief against his sisters in their co-trustee capacities but also sought to declare their inheritance forfeited and requested money damages against them for breaches of fiduciary duties. Disqualifying counsel, it concluded, would "would leave them no option but to proceed without counsel in what currently appears to be contentious and complex trust litigation, under their fiduciary duty as co-trustees of the Trust to defend the trust's interests, and also in defense of their interests as beneficiaries of the Trust."

This timely appeal followed.

## DISCUSSION

Gregory argues that although the trial court correctly ruled the firm breached its ethical duties, it erred in concluding he had delayed unreasonably in seeking the firm's disqualification. He also contends that even if there was unreasonable delay, the court erred in ruling his sisters would be extremely prejudiced by disqualifying their lawyers.[8]

---

[8] In the conclusion of his opening brief, he also asserts the trial court erred in denying the disqualification motion because one of Hedani Choy's lawyers improperly acted as a fact witness against him in this case, by collecting evidence against him in this case and voicing harmful opinions against him. We disregard this point, however, because it is not supported by any legal argument, authority or discussion. " 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record,' " including by " 'explain[ing] how [the law] applies in his case.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 162 [treating appellate argument as forfeited].)

12

In addition to addressing those issues, Veronica and Antoinette argue Gregory lacks standing to seek disqualification because the firm did not represent him individually. They also argue Hedani Choy could not be disqualified from continuing to represent them because there are no confidences to protect. That is because there is no basis to *presume* confidential information was shared because there is no expectation of confidentiality among joint clients, Gregory's duties as co-trustee required him to keep his sisters reasonably informed regarding the trust and its administration, and the trial court found " 'no evidence . . . that [Gregory] provided confidential information to Hedani Choy outside of the scope of the joint representation." We will address these threshold points first.

## I.

### *Standard of Review*

Gregory argues (in his reply brief) that we may review the trial court's disqualification ruling independently, under a de novo standard of review, because the facts are undisputed. While we agree the facts are not in dispute, our standard of review is more nuanced, as Gregory acknowledged in his opening brief. Our Supreme Court has articulated the standard of review governing a ruling on an attorney disqualification motion as follows:

" 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]' ([*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135 (*SpeeDee Oil*) ], 1145.) As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]' (*Ibid*.) As to the trial court's conclusions

13

of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712; *People v. Superior Court (Humberto S.)* 43 Cal.4th 737, 742.)  The trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.'  (*Haraguchi, supra*, at p. 712.)"  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)  "[A] disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion."  (*SpeeDee Oil*, at p. 1144.)  Nevertheless, "trial courts are in a better position than appellate courts to assess witness credibility, make findings of fact, and evaluate the consequences of a potential conflict in light of the entirety of a case, a case they inevitably will be more familiar with than the appellate courts that may subsequently encounter the case in the context of a few briefs, a few minutes of oral argument, and a cold and often limited record."  (*Haraguchi*, at p. 713.)

## II.

### *The Trial Court Did Not Abuse Its Discretion in Declining to Disqualify Hedani Choy.*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'  [Citations.]  Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.  [Citation.]  The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.  The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1145.)

14

## A. The Prohibition Against Successive, Adverse Representation

A lawyer's duties to a former client are well-established. "[A]n attorney, after severing his or her relationship with a client, 'may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.'" (*O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124.) "This prohibition is grounded in both the California State Bar Rules of Professional Conduct—rule 3-310(E) in effect until November 1, 2018, and rule 1.9, effective November 1, 2018—and governing case law." (*Ibid.*)

Rule 1.9 governs here. It states: "(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." (Rules Prof. Conduct, rule 1.9(a) ("rule 1.9").)

Whereas former rule 3-310 expressly prohibited adversity toward a former client, absent consent, only if "by reason of the [prior] representation . . . the member has obtained confidential information material to the employment" (former Rules Prof. Conduct, rule 3-310(E)), the drafters of the revised Rules of Professional Conduct sought to clarify that a lawyer "owes *two* duties to a former client." (Rule 1.9, comment [1], italics added.) One is a duty of confidentiality, and the other is a continuing duty of loyalty. As explained in comment 1 to rule 1.9: "The lawyer may not (i) do anything that will injuriously affect the former client in any matter in which the lawyer represented the former client, *or* (ii) at any time use against the former client knowledge or information acquired by virtue of the previous

15

relationship. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564.) For example, (i) a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client and (ii) a lawyer who has prosecuted an accused person could not represent the accused in a subsequent civil action against the government concerning the same matter. (See also Bus. & Prof. Code, § 6131; 18 U.S.C. § 207(a).) These duties exist to preserve a client's trust in the lawyer and to encourage the client's candor in communications with the lawyer." (Rule 1.9, comment [1], italics added.) Comment 3 to rule 1.9 likewise explains that, "Two matters are 'the same or substantially related' for purposes of this rule if they involve a substantial risk of a violation of *one* of the[se] two duties to a former client," and cites as an example "if the matters involve the same transaction or legal dispute or other work performed by the lawyer for the former client." (Rule 1.9, comment [3], italics added.) According to the Executive Summary prepared by the Commission for the Revision of the Rules of Professional Conduct, "Comment [1] clarifies that there is a residual duty of loyalty owed former clients so that a lawyer is prohibited from attacking the very legal services that the lawyer has provided the former client. . . ." (Executive Summary, New Rule of Professional Conduct 1.9, foll. Rule 1.9, p. 3.[9])

Because the duty not to represent conflicting interests is broader than the duty to protect a former client's confidences, attorneys may be disqualified from representing a former joint client in the same or substantially related matter despite the absence of an expectation of

---

[9] Available at <http://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.9-Exec_Summary-Redline.pdf > [last accessed Nov. 18, 2020].

confidentiality between joint clients. (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 475, 477, 481-485 (*Fiduciary Trust*).) It has long been recognized that, "where an attorney undertakes to advise two clients on a single matter or transaction . . . [that] later results in litigation, the attorney is precluded from representing either client." (*Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 81 (*Civil Service Com.*).) "The California Supreme Court has . . . repeatedly held that the disqualification rules are not merely intended to protect client confidences or other 'interests of the parties'; rather, '[t]he paramount concern . . . [is] to preserve public trust in the scrupulous administration of justice and the integrity of the bar.' " (*Fiduciary Trust*, at pp. 485–486.) Thus, it has been held reversible error to deny a request for disqualification when an attorney for joint clients later takes sides against one of its former clients, irrespective of any threat to client confidences. (See *Civil Service Com.*, at pp. 74, 78-81, 84 [error to deny motion to disqualify county counsel who advised two public entities in connection with personnel investigation from representing one agency against the other in ensuing litigation, despite no showing that counsel received confidential information in prior representation]; *Fiduciary Trust*, at pp. 479-490 [error to deny motion to disqualify husband's and wife's former estate planning attorneys from representing deceased husband's interests in dispute with deceased wife's personal representative concerning liability for payment of inheritance and estate taxes].) We therefore do not agree with Veronica's and Antoinette's contention that Hedani Choy could not be disqualified because no confidential information was (or could have been) imparted to the firm during the period in which it jointly represented all three co-trustees. Regardless of the firm's receipt (or non-receipt) of confidential information from Gregory, the sisters' position is inconsistent

17

with rule 1.9 and ignores the firm's continuing duty of loyalty to Gregory with regard to trust administration matters, a duty that survived the termination of the firm's engagement with him.[10]

We also disagree that Gregory lacks standing to seek disqualification of Hedani Choy on the ground he was not formerly represented by the firm in his individual capacity.[11] "Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship." (*Civil Service Com.*, *supra*, 163 Cal.App.3d at pp. 76-77.) Here, Hedani Choy formerly represented Gregory at a minimum in his capacity as a co-trustee; in this case he filed suit and sought their disqualification in his capacity as a co-trustee (as well as in his personal capacity); and the firm appeared on the sisters' behalf, at a minimum, in *their* capacity as co-

---

[10] Antoinette and Veronica argue Gregory forfeited any argument premised upon the duty of loyalty. We do not agree. Gregory raised the duty of loyalty below, both in his briefing and during oral argument.

[11] Gregory disputes this, arguing the firm *did* provide personal legal advice to him on various subjects and thus formed an attorney-client relationship with him in his individual capacity for that reason. It is unnecessary for us to reach this issue. Moreover, it does not appear that Gregory raised the theory below that the firm represented him in a dual capacity, and so the trial court had no opportunity to consider it. It is a general rule of appellate review that " 'issues not raised in the trial court cannot be raised for the first time on appeal.' " (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

trustees.[12]  In these circumstances, Gregory clearly has standing to seek the firm's disqualification.

Furthermore, California's standing rule is not absolute.  " '[W]here an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel.' " (*Conservatorship of Lee C.* (2017) 18 Cal.App.5th 1072, 1083.)  It would undermine the integrity of the judicial process for a court to overlook the Hedani Choy firm's taking sides in the circumstances here simply because of a line it tried to walk between representing all three siblings in their representative capacity, as co-trustees, but not personally as sole beneficiaries.

Because Hedani Choy has undertaken an engagement adverse to Gregory in the same or substantially related matter that it formerly represented him without his written, informed consent, it violated rule 1.9. Disqualification therefore is warranted unless, as next discussed, Gregory prejudicially delayed in seeking that relief.

---

[12]  The scope of Hedani Choy's current representation of Antoinette and Veronica is unclear.  Gregory sued his sisters personally as well as in their capacity as co-trustees.  Although Hedani Choy filed a response on their behalf solely in their capacity as co-trustees, the response was not confined to allegations directed at them solely as co-trustees (for example, the response denies allegations, which underpin Gregory's request they be disinherited, that they failed to make payments toward the expenses of the home).  In addition, there does not appear to be any response or other papers filed below by the sisters individually.  And some of the arguments made by the firm in opposing disqualification rested on Antoinette's and Veronica's *personal* lack of resources to hire new counsel.  So the picture is somewhat blurry.

## B. Laches

When an attorney undertakes a representation adverse to a former client in the same or substantially related matter, caselaw has recognized a limited exception to the rule of automatic disqualification. "The trial court must have discretion to find laches forecloses the former client's claim of conflict."[13] (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1309 (*River West*).) As stated in *River West*, this "narrow exception should apply if the present client, by way of opposition, offers prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client. (Citations.) . . . . The burden then shifts back to the party seeking disqualification to justify the delay. That party should address: (1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." (*Id.* at p. 1309.) "With convincing evidence that the delay was inexcusable and the present client will suffer prejudice, the court may find the former client has waived any right to disqualify counsel . . . ." (*Id.* at p. 1310.)

As noted, Gregory argues the trial court erred because neither element was satisfied here: there was no unreasonable delay in seeking Hedani Choy's disqualification, nor were his sisters prejudiced by any delay.

---

[13] The doctrine of unreasonable, prejudicial delay is variously described in the caselaw as a form "waiver," "estoppel" or "laches." (See *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 625, fn. 18.) We express no view but for purposes here refer to it as "laches," the nomenclature utilized in *River West*.

20

## 1. Unreasonable Delay

Gregory argues, first, that the trial court erred to the extent it included the period of time he was still represented by Hedani Choy in measuring his delay, because the conflict of interest at issue here—the firm's *continued* representation of his sisters in a manner adverse to him as a *former* client of the firm—did not arise until the firm ceased representing him and informed him in May 2018 that it would continue to represent his sisters. And he argues that, after that, he did not unreasonably delay in seeking the firm's disqualification.

We are not persuaded the trial court could not consider events predating the termination of the joint client relationship. Antoinette and Veronica cite *Zador Corp., N.V. v. Kwan* (1995) 31 Cal.App.4th 1285 (*Zador*), which reversed an order disqualifying a law firm from continuing to represent one of two former joint clients in litigation after the other joint client had retained separate counsel when information produced in discovery disclosed a conflict of interest between the joint clients.[14] The facts of that case are quite different and, moreover, the primary basis for its decision was that the former client who sought disqualification had given informed,

---

[14] At issue was a complicated real estate transaction involving multiple parties and numerous claims, including an allegation by the buyer that the sales price had been fraudulently inflated. The law firm jointly represented the buyer and an agent in the transaction, until documents produced by another party in the case suggested that the agent might have received money from the sellers. (*Zador*, *supra*, 31 Cal.App.4th at p. 1291.) The agent retained separate counsel, who threatened to move to disqualify the firm if the buyer sued the agent. (*Ibid.*) About three years later, shortly after deposition testimony implicated the agent in a conspiracy to defraud the buyer and the agent then acknowledged he had in fact profited from the transaction, the buyer filed a cross-claim against the agent. (*Id.* at p. 1292.) Four months later, the agent moved to disqualify the law firm. (*Ibid.*)

written consent to the firm's continuing representation of the other joint client in the event a conflict of interest arose between them. (See *id*. at pp. 1295-1302.) But, in a portion of the opinion Gregory does not address, the appellate court also noted that "[i]n addition, we may consider [former client's] delay in bringing the motion," because "[m]otions to disqualify are often used a tactical device to delay litigation." (*Zador*, at p. 1302.) Among other evidence of delay *Zador* noted*, "there is some indication that [former client] all along realized that his position conflicted with the position of [current client]. If he did not, then he should have, since he admitted profiting from the overvalued [real estate] transaction."* (*Ibid*., italics added.) Gregory does not address this aspect of *Zador* and explain why it does not support the trial court's ruling here, particularly given the fact Loh told him his interests conflicted with his sisters' on October 30, 2017, nearly a year and a half before the disqualification petition was filed.

Moreover, even assuming that only the period after the attorney-client relationship ended is legally relevant, Gregory has not demonstrated the trial court abused its discretion in concluding the ten-month delay between the May 8, 2018 termination letter and Gregory's disqualification request on March 7, 2019, was extreme and inexcusable.

Gregory argues that knowledge of the conflict of interest should not be imputed to him during that period, and that the conflict of interest was not actually discovered until he retained new counsel in December 2018, who promptly filed the petition as soon as mediation failed.[15] We agree that his counsel acted promptly after discovering the conflict of interest. But before that, Gregory had indisputably known (since May 2018) that the firm was continuing to represent his sisters, that their interests conflicted with his,

---

[15] These arguments are developed most clearly in his reply brief.

22

and that Hedani Choy never asked for, nor obtained, his written consent to the continued engagement. He cites no legal authority that his knowledge of the facts alone (as distinct from their legal significance) is not sufficient to start the "laches" clock. Moreover, there is substantial evidence he was on notice the firm could be precluded from continuing to represent his sisters should the siblings' interests diverge: the proposed, unsigned joint engagement letter emailed to him on August 24, 2016, addressed to all three siblings, said the firm "will be forced to withdraw from our representation of you" if a conflict of interest arose. Although that is not the engagement letter he signed, it indisputably was provided to him. Were that not enough, Gregory consulted with two other lawyers during this period, and although apparently neither lawyer discovered the conflict of interest and one lawyer's involvement was brief, there was no showing that either lawyer was prevented from discovering the conflict. On the contrary, the adversity was obvious, and a simple inquiry by Gregory's more recent counsel revealed that Gregory had not executed any valid written conflict waiver. There was no showing that Gregory's prior counsel could not have inquired about a waiver earlier.

Gregory also argues there was no delay because there was no action pending in which to seek the firm's disqualification until he filed his petition. However, that begs the question. He does not explain why he could not have filed his petition sooner. Further, Gregory did not seek to disqualify Hedani Choy from representing his sisters only in this case; he asked the trial court to disqualify the firm "in any matter relating to or arising out of the trust administration," which presumably meant disqualifying the firm from representing his sisters *at all* in connection with the trust. Even when no lawsuit is pending in which to seek the disqualification of conflicted counsel,

23

there is always the option of bringing an action for injunctive relief.  (See Vapnek et al., Cal. Practice Guide:  Professional Responsibility (The Rutter Group 2020), Conflicts of Interest, ¶4:318 ["A motion to disqualify conflicted counsel cannot be brought where there is no pending litigation . . . .  [I]n this situation, a collateral injunctive action to end the conflicted representation should be filed"].)

Fundamentally, the concept of delay is contextual.  Here, the trial court reasonably could conclude that a ten-month delay in the circumstances of this trust dispute was extreme.  The trust's main asset, the house, was a wasting asset, and with every passing month the liquidity problem worsened, while Gregory continued to live in the home rent-free, consuming the trust's liquid assets.  Although ten months might not be extreme delay in the context of lengthy, well-financed, commercial litigation, time obviously is of the essence here because none of the siblings have the means to support the home's carrying costs.

For all of these reasons, Gregory has failed to show the trial court abused its discretion in concluding he delayed unreasonably in seeking to disqualify Hedani Choy.

### 2.  Prejudice

We also conclude the trial court did not abuse its discretion in ruling the delay was prejudicial, because disqualifying Hedani Choy at this point would leave Antoinette and Veronica unable to afford new counsel since the trust's liquid assets had been depleted.

Gregory contests this ruling, first, because he contends his sisters have no right to use trust assets to pay for independent counsel.  Veronica and Antoinette disagree (and they also argue this point was forfeited), but it is unnecessary to decide that legal question.  Assuming without deciding they

24

have no right to use trust assets to pay for new defense counsel, the prejudice from Gregory's delay in seeking to disqualify their current counsel is obvious, because they (like their brother) cannot afford to hire a lawyer given their own limited financial resources. Had Gregory sought to disqualify Hedani Choy at or around the time the firm told him in May 2018 it was continuing to represent his sisters the playing field would have been more level, because at that juncture Gregory was not represented by counsel either. Leaving Veronica and Antoinette potentially to fend for themselves now, rather than earlier, puts them in a much worse position because Gregory has now retained pro bono counsel who has filed a petition that not only seeks to modify the trust and remove them as co-trustees but also seeks to disinherit them entirely and requests an affirmative award of damages against them. The ante has been upped considerably. Indeed, at the hearing, Gregory's counsel tacitly acknowledged this: attempting to minimize the petition's onerous scope, he told the trial court, "I think we all know that zealous advocates pray for everything under the sun in their prayer." Precisely. The trial court expressed concern for the scope of relief Gregory is seeking ("that's what makes this case . . . particularly troublesome"), and in its written ruling found "that the Petition to Disqualify is being used more as a sword than a shield." The court was rightly troubled by the prospect of leaving two unsophisticated lay people unrepresented by counsel in these circumstances, particularly in a complicated trust dispute of this nature. (See *Newport v. Hatton* (1924) 195 Cal. 132, 148 [factors to be considered in determining whether laches applies include, inter alia, "the nature of the case and the relief demanded"], cited with approval in *River West*, *supra*, 188 Cal.App.3d at p. 1309.)

25

Gregory also disputes that his sisters are unable to hire new counsel, arguing that their interests in a house worth $1.8 million is sufficient to attract contingency counsel. In particular, he asserts that "[c]learly, Hedani Choy anticipates payment from some other source [than trust liquid assets], perhaps from the sale of the [house] if the Sisters win," and yet Antoinette and Veronica did not show that another firm would work "on the same basis," or even show that they tried and failed to retain new counsel. These arguments were not raised below and have been forfeited.[16] (See, e.g., *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 150.)

Even if we were to consider these points, we would reject them. In the first place, Gregory's assertion that Hedani Choy has a contingency arrangement with Antoinette and Veronica is sheer conjecture. Furthermore, Hedani Choy told the court below it was representing Antoinette and Veronica on a pro bono basis; the trial court was entitled to rely on the truth of that representation by officers of the court, and so are we.[17]

---

[16] Below in his briefing, Gregory argued only that his sisters' claimed inability to pay for new counsel "is not credible." At the hearing, one of his lawyers also argued it was legally irrelevant ("the law does not take that into consideration").

[17] It wrote in a "sur-reply" brief filed on June 19, 2019, "they do not, as individuals, have the resources to pay for replacement counsel. Accordingly, [Hedani Choy] intends, absent an order disqualifying them from doing so, to see this matter through on their behalf, notwithstanding their current inability to pay for its professional services. See Business & Professions Code[,] § 6068[, subd. ](h)."

At the hearing, counsel reiterated that "we signed on for this. I think it's important that it be seen through. I don't want these two individuals to be prejudiced by not having anybody and not having any resources. And if at

Although it is theoretically possible that other counsel might be willing to represent Antoinette and Veronica with the expectation of payment from their share of proceeds from the sale of the house, the trial court did not abuse its discretion in finding extreme prejudice. The possibility of their hiring counsel on a contingency basis is remote to say the least, given the relatively low dollars involved, the complexity of the issues and the level of obvious rancor between the parties (not to mention, formal mediation has already been attempted and failed). Had the trial court considered the point, it reasonably could have concluded their chances were extremely low to non-existent. This is not your garden-variety personal injury case. Moreover, Gregory cites no legal authority suggesting they must prove they tried and failed to retain new counsel in order to demonstrate prejudice. It is enough that finding replacement counsel would certainly be difficult for them, and we do not understand Gregory to contend it would be simple or easy.

Below, one of Gregory's lawyers—to her credit—acknowledged that the inability to hire a new lawyer constitutes prejudice ("[t]o some extent"), and that "[t]he prejudice is an unfortunate situation in this case whereas [*sic*] Your Honor has understood no one has any money." We agree.

### III.

### *Remaining Issues*

Given the number and complexity of issues the parties have raised, we briefly address two additional matters.

First, Antoinette and Veronica have filed a motion pursuant to Code of Civil Procedure section 909 asking us to take new evidence on appeal. They

---

the end of the day that means that I don't get paid, my firm doesn't get paid for our services, that's fine by me if that's how it plays out."

27

argue that evidence subsequently produced during discovery shows Gregory contacted two other attorneys before hiring O'Sullivan as his pro bono counsel in trust matters. Specifically, on October 13, 2017, while still represented by Hedani Choy, he emailed an attorney about his disability benefits,[18] and on February 17, 2018, after Gregory had told Loh he was firing her firm and before she confirmed (in May 2018) the firm no longer represented him but continued to represent his sisters, he emailed another attorney with some background information about efforts to address the trust's liquidity problem. In opposition to the motion, Gregory has submitted a declaration stating that these attorneys are friends of his, and neither agreed to represent him or even consult with him, and that they clearly told him that after he contacted them.

We previously took the motion under submission, and now deny it. "We grant such requests only under exceptional circumstances that justify deviating from the general rule that appellate review is limited to the record before the lower court." (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 946, fn. 6.) "The general rule is that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule serves to promote speedy adjudications of fact and to avoid prolonged delays on appeal. It also reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions

---

[18] The October 13, 2017 email is captioned "Loss of SSI benefits." In full, the message reads: "My name is on checking account my sister transfers monies into monthly grin [*sic*] trust account to pay utility bills. SSA flags this a personal assets. [*sic*] wells Fargo says that they can't remove my name without completely rewriting the trust. So my monthly SSI benefit is now $187 per month and I'm paying back $4000. Please tell me there's a remedy. TGIF."

of fact and of the appellate court to decide questions of law . . . .' " (*In re Elise K.* (1982) 33 Cal.3d 138, 149.)  Antoinette and Veronica have not demonstrated exceptional circumstances here.  (See, e.g., *LaGrone*, at p. 946, fn. 6 [denying motion]; *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 604-605 [denying motion to consider newly obtained evidence on appeal derived from discovery responses provided after trial court issued ruling at issue on appeal].)[19]

Second, the parties have raised a number of issues on appeal, many of which are unnecessary for us to address or decide.  For example, and to be clear, we express no opinion as to whether Gregory has breached any duties as a co-trustee; whether or to what extent attorney fees may properly be paid from trust assets; and whether or to what extent Hedani Choy may be required to disgorge the fees it has already received.[20]  All of those issues, as well as the underlying merits of Gregory's petition, are beyond the scope of this decision.

## DISPOSITION

The order denying appellant's request to disqualify the law firm of Hedani Choy is affirmed.  Respondents shall recover their costs.

---

[19]  Because we are denying the motion, we also deny as irrelevant Gregory's related motion filed on June 23, 2020, in opposition, asking us to take judicial notice of the minutes of court proceedings held on April 29, 2019.

[20]  We do note our concern, however, with the Hedani Choy firm filing an appellate brief in this court on behalf of Antoinette and Veronica implying strongly, though stopping short of expressly saying, that fee disgorgement would not be an appropriate remedy.  That position puts the firm at odds with its clients, whose interests are in maximizing trust assets and minimizing losses occasioned by its counsel's ethical violations.

_____

STEWART, J.


We concur.


_____

KLINE, P.J.


_____

RICHMAN, J.


*Mar v. Malette* (A158766)